[No. 27170. *En Banc.* September 22, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Ray Crabb, Plaintiff,* v. JAY OLINGER, *as Supervisor of Industrial Insurance, Respondent.*[1]

[1] Reported in 82 P. (2d) 865.

*John Geisness,* for relator.

*The Attorney General* and *T. H. Little, Assistant,* for respondent.

*Todd, Holman & Sprague* and *Lowell P. Mickelwait, amici curiae.*

MILLARD, J.—On December 19, 1932, while in the course of his employment as an employee of the Washington Pulp and Paper Corporation in an extrahazardous industry, Ray Crabb sustained an accidental injury to his neck. On February 2, 1937, the supervisor of industrial insurance of the department of labor and industries entered an order that the claim of Crabb be closed, and that he be awarded time loss compensation in the amount of $1,275, and permanent partial disability compensation in the amount of $960.

The review of the above mentioned order by the joint board of the department on application of Crabb's employer, resulted in the entry of an order, April 11, 1938, by the joint board sustaining the action of the supervisor. The employer appealed to the superior court for King county from the order made by the joint board. The supervisor of industrial insurance refused to accede to the demand of Crabb for payment of the amount awarded to Crabb by the joint board. The reason assigned for refusal to make the payment is that Crabb's employer appealed to the superior court from the order made by the joint board, which appeal ousted the department of jurisdiction in the case, and that the relator has a plain, speedy, and adequate remedy at law by way of appeal.

Based on the foregoing, relator seeks a writ of mandate requiring the supervisor to transmit voucher to the state auditor in order that relator may receive the compensation awarded him by the joint board of the department, April 11, 1938.

Counsel for respondent argue that the employer's exercise of its right of appeal from the order of the joint board to the superior court pursuant to the statute (Rem. Rev. Stat., § 7697 [P. C. § 3488]) divested the department of jurisdiction; that the department cannot make a valid and enforcible order in the cause until disposition by the courts (superior and supreme) of the employer's appeal from the joint board's order awarding compensation to relator, and then only such orders as the courts may direct; and that to grant the relief for which the relator prays would deprive the employer of property without due process of law.

The determination of the question whether an employee may by mandamus compel the supervisor of industrial insurance to pay an award for workmen's compensation after the employer has appealed to the superior court from the order by the joint board allowing the claim, is dependent upon the effect that is to be given to the italicized portion of the following language of Rem. Rev. Stat., § 7697:

"Within thirty days after the final order of the joint board upon such application for rehearing has been communicated to such applicant, or within thirty days after rehearing is deemed denied as herein provided, such applicant may appeal to the superior court of the county of his residence, . . . No bond shall be required on such appeal or on appeals to the supreme court, except that an appeal by the employer from a decision of the department under section 7683 [a provision relating to employer's responsibility for safeguard] shall be ineffectual unless, within five days following the service of notice thereof, a bond, with surety satisfactory to the court, shall be filed, conditioned to perform the judgment of the court. *Except in the case last named an appeal shall not be a stay.* . . ."

The provision denying a stay on appeal has relation to appeals from orders of the joint board to the su-

perior and supreme courts. In the case at bar, we are not concerned with appeals under § 7683 [P. C. § 3477] referred to above.

While we held in *Mud Bay Logging Co. v. Department of Labor & Industries*, 189 Wash. 285, 64 P. (2d) 1054; id., 193 Wash. 275, 75 P. (2d) 579, that employers were entitled under the workmen's compensation act to appeal from orders awarding compensation to workmen, the question was not presented whether, in the absence of a bond superseding the order, an appeal "shall not be a stay" of execution.

■ An appeal to this court from a judgment of the superior court will not stay proceedings on that judgment unless a supersedeas bond is given. Execution may issue immediately after judgment unless execution is stayed by supersedeas bond. The statute (Rem. Rev. Stat., § 1722 [P. C. § 7296]) gives to a judgment debtor the legal right to stay an execution.

■ ■ In the absence of a bond superseding the order of which the employer complains in the case at bar—in view of Rem. Rev. Stat., § 7697, granting the right of appeal but denying the right to supersede the order—relator may enforce payment by writ of mandamus.

The workmen's compensation act is highly remedial and beneficent in purpose and should be liberally construed, if necessary, so as to accomplish its evident intent and purpose. Declaring the common law system governing the remedy of workmen against employers for injuries received in hazardous work was inconsistent with modern industrial conditions, the state of Washington, in order to afford a *remedy* to the workmen that would be *certain, expeditious,* and *adequate,* declared, in the exercise of its police and sovereign power,

". . . that all phases of the premises are withdrawn from private controversy, and sure and certain

relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided." Rem. Rev. Stat., § 7673 [P. C. § 3468].

An administrative body may be empowered to give final decisions without a right of appeal to the courts. Mott, Due Process of Law, 238. It follows that the legislature may, to accomplish the evident intent and purpose of the workmen's compensation act—certain, expeditious, and adequate relief to injured workmen— regulate, as it has, the right of appeal.

The section (§ 4, chapter 74, Laws of 1911, p. 349, as amended by § 1, chapter 104, Laws of 1931, p. 297, Rem. Rev. Stat., § 7676 [P. C. § 3471]) of the workmen's compensation act on the subject of schedule of contribution opens with the declaration that, inasmuch as industry should bear the greater portion of the burden of the cost of its accidents, each employer shall, prior to January 15th of each year, pay into the state treasury, in accordance with the schedule in the act provided, a sum equal to a certain percentage of his total pay roll for that year, which is deemed the most accurate method of equitable distribution of burden in proportion to relative hazard. That declaration has been carried into every amendment of the section subsequent to 1911.

Following that declaration in § 4 of the act are the rates of contribution, which are inflexible but subject to "future adjustment by the legislature." The industries are divided into a number of classes, but the classifications are subject "to rearrangement following

any relative increase or decrease of hazard shown by experience."

In *State ex rel Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, the character of the contribution imposed under this section was defined as follows:

"It is the consideration which the owners of the industries pay for the privilege of carrying them on. It is, therefore, in the nature of a license tax, and can be justified on the principle of law that justifies the imposition and collection of license taxes generally. In this state, such taxes may be imposed, either as a regulation or for the purpose of revenue, the only limitation upon the power being that such taxes when imposed on useful trades and industries shall not be unreasonable, and if a class of trades or industries is selected from the whole, and the tax imposed upon the class selected alone rather than upon the whole, that there be some reasonable ground for making the distinction. . . .

"The sums exacted from the several industries named we think may be treated as partaking both of the nature of a license for revenue and regulation; as such, however, we find nothing in the principle inimical to either the state or Federal constitutions."

And it was upheld as such in the face of the contention that it amounted to a taking of property without due process of law, in that it rested an equally heavy hand upon the careful and careless employer—requiring the same measure of contribution from the one who had no, or few, accidents and the one who had many.

The opinion is rested wholly on the taxing and police power. In sustaining our position, we did not resort to the provision of the section designed to meet the suggested objection, that the rates are subject to future adjustment by the legislature, and the classifications of industries are subject to rearrangement following

any relative increase or decrease of hazard shown by experience.

The idea of conforming rates to accident experience was more clearly expressed in the amendment of § 4, chapter 74, Laws of 1911, p. 349, in § 1, chapter 188, Laws of 1915, pp. 674, 677. That amendment provides:

"In that the intent is that the fund created under this section shall ultimately become neither more nor less than self-supporting, exclusive of the expense of administration, the rates named in this section are subject to future adjustment by the industrial insurance department, in accordance with any relative increase or decrease in hazard shown by experience, and if in the judgment of the industrial insurance department the moneys paid into the fund of any class or classes shall be insufficient to properly and safely distribute the burden of accidents occurring therein, the department may divide, rearrange or consolidate such class or classes, making such adjustment or transfer of funds as it may deem proper."

The section as amended, as well as the workmen's compensation act as a whole, was again subjected to attack. *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645, L. R. A. 1917D, 10. In upholding the act and sustaining compulsory contribution to the accident fund as an occupational tax, we said:

"The legislature has adopted the *idea* of industrial insurance, and seen fit to make that idea a workable one by putting its execution, as well as its administrative features, in the hands of a commission. It has abolished rights of actions and defenses and in certain cases denied the right of trial by jury. The legislature has said to the man whose business is a dangerous one and the operation of which may bring injury to an employee, that he cannot do business without waiving certain rights and privileges heretofore enjoyed, and it has said to the employee that, inasmuch as he may become dependent upon the state, that he must give up his personal right of contract when about to engage

in a hazardous occupation and contract with reference to the law. These demands are the fundamentals of our industrial insurance law. If the law is not administered as therein provided, it is not likely that a compulsory law such as it is could ever be adequately administered; for, aside, from its humane purpose, it was adopted in order that the delay and frequent injustice incident to civil trials might be avoided.

" 'The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable.' Laws 1911, page 345.

"To uphold the law in the sense of sustaining the *idea* of industrial insurance, and to deny the right of executing it without the intervention of the courts, would throw us back on the original ground and we should then, if consistent, hold the *idea* of industrial insurance to be beyond the limit of the police power."

That case was appealed to the supreme court of the United States, which sustained the act in all particulars and specifically adopted the view of this court with respect to the character of the contributions exacted of employers and with respect to the power of the state to administer the fund. *Mountain Timber Co. v. Washington,* 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260, Ann. Cas. 1917D, 642. The court said:

"We are clearly of the opinion that a State, in the exercise of its power to pass such legislation as reasonably is deemed to be necessary to promote the health, safety, and general welfare of its people, may regulate the carrying on of industrial occupations that frequently and inevitably produce personal injuries and disability with consequent loss of earning power among the men and women employed, and, occasionally, loss of life of those who have wives and children or other relations dependent upon them for support, and may require that these human losses shall be charged against the industry, either directly, as is done in the case of the act sustained in *New York Central R. R. Co. v. White, supra* [243 U. S. 188, 61

L. Ed. 667], or by publicly administering the compensation and distributing the cost among the industries affected by means of a reasonable system of occupation taxes. The act cannot be deemed oppressive to any class of occupation, provided the scale of compensation is reasonable, unless the loss of human life and limb is found in experience to be so great that if charged to the industry it leaves no sufficient margin for reasonable profits. But certainly, if any industry involves so great a human wastage as to leave no fair profit beyond it, the State is at liberty, in the interest of the safety and welfare of its people, to prohibit such an industry altogether.

"To the criticism that carefully managed plants are in effect required to contribute to make good the losses arising through the negligence of their competitors, it is sufficient to say that the act recognizes that no management, however careful, can afford immunity from personal injuries to employees in the hazardous occupations, and prescribes that negligence is not to be determinative of the question of the responsibility of the employer or the industry. Taking the fact that accidental injuries are inevitable, in connection with the impossibility of foreseeing when, or in what particular plant or industry they will occur, we deem that the State acted within its power in declaring that no employer should conduct such an industry without making stated and fairly apportioned contributions adequate to maintain a public fund for indemnifying injured employees and the dependents of those killed, irrespective of the particular plant in which the accident might happen to occur. In short, it cannot be deemed arbitrary or unreasonable for the State, instead of imposing upon the particular employer entire responsibility for losses occurring in his own plant or work, to impose the burden upon the industry through a system of occupation taxes limited to the actual losses occurring in the respective classes of occupation."

The idea of readjusting rates and rearranging classifications to conform to loss or accident experience continued to develop. In the amendment of 1917 (Laws

of 1917, chapter 120, § 2, pp. 477, 482), the idea is expressed in the following language:

". . . The industrial insurance commission shall on or before the 30th day of September, 1917, and semi-annually thereafter make corrections of classifications as between classes of industries if and as experience shall show error or inaccuracy therein, and, under and conformably to the foregoing rule of classification and premium rating, shall at the same time lower the premium rate of any establishment or plant if and as experience shall show it to maintain such a high standard of safety or accident prevention as to differentiate it to that extent from other like establishments or plants, or shall raise the premium rate of any establishment or plant if and as experience shall show it to maintain so low a standard of safety or accident prevention as to justly warrant its being subjected to that extent to a greater contribution to the accident fund."

The amended section of 1917 further provides:

"From the original classification or premium rating or any change made therein any employer claiming to be aggrieved may upon application, have a hearing before the industrial insurance commission upon notice to the interested parties and in the manner provided in section 6604-20 a review by the courts. If, at the end of any year, it shall be seen that the contribution to the accident fund by any class of industry shall be less than the drain upon the fund on account of that class, the deficiency shall be made good to the fund on the 1st day of February of the following year by the employers of that class in proportion to their respective payments for the past year."

Section 6604-20, Rem. & Bal. Code, appeared as § 20, p. 368, of the original act and has been carried forward, amended in some particulars, as Rem. Rev. Stat., § 7697. By the 1917 amendment of § 4, chapter 74, Laws of 1911, the employer was given the right of appeal to protect his classification or to show that he was entitled to a lower rate than other employers in the same class,

showing that in his plant he maintained such a high standard of safety or accident prevention as to differentiate it to that extent from other like establishments or plants. Up to this time, the change in the method of levying the "license tax" and the granting of a right of appeal from the order of levy wrought no fundamental change in the "idea of industrial insurance," as conceived by the legislature in the act of 1911 and interpreted by us and by the supreme court of the United States in the cases cited above.

The "idea of industrial insurance" conceived by the legislature and interpreted by the courts in those cases was that extrahazardous industry must bear the cost of injury and death of workmen; that, as a condition precedent to the right to engage in extrahazardous industry, the employer must pay a license or occupation tax; that the revenues derived from this license tax are subject to administration by the state.

True, we subsequently described the revenues as a "trust fund." They are a "trust fund" only in that the "idea of industrial insurance" imposes upon the state the moral and legal obligation to use the revenues for the declared purpose for which it collects them.

Section 4, chapter 74, Laws of 1911, p. 349 (Rem. Rev. Stat., § 7676) was amended by § 1, chapter 104, Laws of 1931, p. 297. The 1931 amendment, which provides in greater detail a method of adjustment of rates and rearrangement of classification, requires the department, prior to the first day of January each year, to determine for each class a basic premium rate for the ensuing calendar year. In fixing the basic rate of premium, the department is directed to take into consideration, first, the cost experience of each class and sub-class over the two year period immediately preceding September first of the year in which the basic

rate is being fixed; second, the then condition of each class and sub-class account. It is then provided:

"The department of labor and industries shall also, prior to the first day of January, 1932, and prior to the first day of January of each year thereafter, determine the percentage of the payroll to be paid into said accident fund during the ensuing year by each employer to be credited to each class and/or sub-class account applicable to the employer's operations of business, and in so doing shall take into consideration the average cost experience of each employer for each one-hundred dollars of payroll in each such class or sub-class over the two year period immediately preceding September first of the year in which the percentage rate is being determined, and in so computing the cost experience of any employer the fixed sum of four thousand dollars ($4,000) shall be charged against his experience for each injury resulting in the death or total permanent disability of a workman instead of the actual cost to the accident fund of such injury. The actual rate or per cent of payroll which any employer shall be required to pay for the accident fund shall be twenty-five per cent (25%) of the basic rate, plus seventy-five per cent (75%) of the employer's cost rate for each one hundred dollars ($100) of payroll over the two year period next preceding the then last September first, but in no case shall the total rate exceed one hundred seventy-five per cent (175%) of the basic rate. . . ." Rem. Rev. Stat., § 7676.

The result of the provision is to more nearly require each employer to bear the cost of accidents in his own plant—to fix the rate of contribution in accordance with the high or low, as the case may be, standard of safety in his plant operation. There is nothing in the section as amended indicative of a purpose of the legislature to abandon the "idea of industrial insurance." Neither is there anything in the section as amended to disclose that the legislature conceived the contribution exacted to be of any different character than it was held to be under the original act, namely, a license

tax. That the legislature still conceived the contribution to be a license tax, is evinced by the direction to the department to "take into consideration . . . the then condition of each class and sub-class account." It is patent that the state was exercising its sovereign power of taxation to meet the necessities of the various accounts of the accident fund.

The statute as amended classifies the taxpayer by a different method. than theretofore provided. The basic principle of industrial insurance is maintained. The basis of classification is reasonable. If it is not unreasonable to exact the tax from proprietors of "carefully managed plants . . . to contribute to make good the losses arising through the negligence of their competitors" (*Mountain Timber Co. v. Washington, supra*), it cannot be unreasonable to exact contribution from the employer on the basis of the standard of safety by which his own plant is operated. The contribution retains the character of a license tax; and since the basis of classification among taxpayers is reasonable, there is no violation of the constitutional guaranty of uniformity and equality in taxation nor of that prohibiting the taking of property without due process of law. [Const. Art. I, § 3; Art. VII, § 2; Federal constitution 14th amendment.]

Appeal to the courts in taxing processes is a matter of grace, not of right. Unless it is found in the statutes, it does not exist. *In re Yakima Amusement Co.,* 192 Wash. 174, 73 P. (2d) 519.

The appeal granted to the employer does not, under the plain language of the statute, operate as a stay; therefore, the compensation awarded by the joint board should be paid without regard to the question whether the appeal of the employer may be successful.

If the employer is successful upon its appeal, the employer will then have the right to require charged

off of its cost experience any disbursement made to the claimant. The employer of relator would be in the same position as all other employers in the class so far as the effect of the disbursement to the claimant is concerned; the base rate would be increased as to all employers in the class. If the employer of the injured relator may successfully urge that he has a constitutional right to have his appeal operate as a stay, every other employer in the class may make the same contention, because all would be equally affected by the disbursement to the claimant. Each and every employer in the particular class would have a right of appeal from each award by the department of labor and industries, and each appeal would operate as a stay, despite the specific language of the statute that "an appeal shall not be a stay."

An analogous authority is *State ex rel. Weyerhaeuser Timber Co. v. State Tax Commission,* 189 Wash. 56, 63 P. (2d) 494, in which we held that, under the statute providing that any taxpayer feeling aggrieved by the action of the board of equalization may appeal to the state tax commission, the right of appeal is confined to the owner of property involved in the record and who feels aggrieved, and the grievance must relate to an interest that is direct and not indirect or theoretical. In that case, certain taxpayers in Snohomish county attempted to appeal to the state tax commission to review the assessment and valuation of the property of the Weyerhaeuser Timber Company. The appealing taxpayers insisted that the assessment of the Weyerhaeuser Timber Company's property was too low, and that this undervaluation would increase the tax upon their property. We granted a writ of prohibition restraining the tax commission from entertaining the appeal upon the ground that the grievance

of the appealing taxpayers was so indirect and remote as not to give them a right of appeal.

The base rate payable by employers into the industrial insurance fund may be, as held by the supreme court of the United States, compared to a tax. A disbursement to the relator may increase the base rate of all employers of the class in question, but no more directly than a decrease in the assessed valuation of the property of the Weyerhaeuser Timber Company would operate to increase the tax upon the property of the other taxpayers in the county.

A reading of the provision that an appeal shall not be a stay can lead to no other reasonable conclusion than that it was the intention of the legislature that payment of an award, like the one in the case at bar, should not be stayed. To hold that compensation such as that awarded to the relator can be stayed pending judicial review on appeal by the employer from the order making the award, would nullify the very purpose of the compensation act to furnish certain, expeditious, and adequate relief to the injured workman.

The relator does not seek in this proceeding to establish his right to compensation—that has been determined, and is conceded by respondent. The purpose of this proceeding is to require the immediate payment of the compensation that has been awarded to him.

Relator has no right of appeal. He was awarded that with which he is content. His only possible remedy is one that will compel immediate payment of that which has been awarded to him. Even if he had a remedy by appeal, it would not constitute a bar to relief by mandamus, which is the only plain, speedy, and adequate remedy the relator has to enforce his right to the award.

An apt authority is § 1375, Spelling on Extraordinary Relief, reading as follows, which we quoted with approval in *State ex rel. Dudley v. Daggett,* 28 Wash. 1, 68 Pac. 340.

"In order that the existence of another remedy shall constitute a bar to relief by mandamus, such other remedy must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the circumstances of the particular case. It must be such a remedy as is calculated to afford relief upon the very subject of the controversy. For if it is not adequate to afford the party aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy. In other words, it is not merely the absence of other legal remedies, but their inadequacy coupled with the danger of failure of justice, that would result without interference by an extraordinary remedy which usually determines the propriety of this species of relief."

The writ is granted.

HOLCOMB, GERAGHTY, and BLAKE, JJ., concur.

MAIN and BEALS, JJ., concur in the result.

SIMPSON, J. (dissenting)—This is the third time this matter has been before this court. The nature and character of the injuries which relator alleges he sustained are fully set forth in *Crabb v. Department of Labor & Industries,* 186 Wash. 505, 58 P. (2d) 1025, in which we decided that the department would have to entertain the claim referred to therein. Thereafter the supervisor considered the claim on its merits and entered an order February 2, 1937, making award as indicated in the majority opinion.

The employer appealed to the joint board of labor and industries for a rehearing in order to review the actions of the supervisor. Before a rehearing could be had, relator demanded an immediate payment of

the compensation award; and when it was refused, he applied to this court for a writ of mandate. The writ was denied for the reason that the claim had not been fully disposed of by the department. *State ex rel. Crabb v. Olinger,* 191 Wash. 534, 71 P. (2d) 545.

Then, after conducting hearings, at which time the employer was given opportunity to present evidence, the joint board sustained the supervisor's award. The employer then appealed from the order of the joint board to the superior court, and its appeal is still pending.

Relator again demanded payment of the award and, upon being refused, comes here by a petition for a writ of mandate.

The question involved is whether an employee may by mandamus compel the supervisor of industrial insurance to pay an award for workman's compensation after the employer has appealed to the superior court from an order of the joint board allowing the claim.

In order to determine this question, we must ascertain what effect is to be given to the following sentence in Rem. Rev. Stat., § 7697 [P. C. § 3488]: "Except in the case last named an appeal shall not be a stay." It is contended this provision of the statute refers to an appeal to the superior court, and makes it obligatory upon the department to make payment to the claimant of the sum the joint board found to be due him notwithstanding such appeal.

The writer is mindful of the fact that the preamble of the workmen's compensation act, § 1, chapter 74, Laws of 1911, p. 345, Rem. Rev. Stat., § 7673 [P. C. § 3468], declares that the common law system governing the remedy of workmen against employers for injuries received in extrahazardous work was uncertain, slow, and inadequate; and it is clear that the act evidences an intent to render the workmen's remedy

more certain, speedy, and adequate. This court is and should be solicitous to give effect to that intent.

. The legislature has provided a complete and orderly procedure to expedite the disposition of claims of injured workmen by the department and to insure a final determination thereof by the courts with dispatch.

Relative to appeals, Rem. Rev. Stat., § 7697, provides:

". . . The proceedings in every such appeal shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced . . ."

Rem. Rev. Stat., § 7697, provides:

". . . Such application shall set forth in full detail the grounds upon which the applicant considers such order, decision or award is unjust or unlawful, and shall include every issue to be considered by the joint board, and it must contain a detailed statement of facts upon which such claimant, employer or other person relies in support thereof. The claimant, employer or other person shall be deemed to have waived all objections or irregularities concerning the matter on which such rehearing is sought other than those specifically set forth in such application for rehearing or appearing in the records of the department. . . .

"Within thirty days after the final order of the joint board upon such application for rehearing has been communicated to such applicant, or within thirty days after rehearing is deemed denied as herein provided, such applicant may appeal to the superior court of the county of his residence, but upon such appeal may raise only such issues of law or fact as were properly included in his application for rehearing, or in the complete record in the department. On such appeal the hearing shall be de novo, but the appellant shall not be permitted to offer, and the court shall not receive, in support of such appeal, evidence or testimony other than, or in addition to, that offered before the joint board or included in the record filed by the department: . . ."

We held in the case of *Hodgen v. Department of Labor & Industries,* 194 Wash. 541, 78 P. (2d) 949, that on appeal to this court the hearings are *de novo.* Our statute, however, plainly indicates that a *de novo* trial in reviewing the action of the joint board includes such issues of law or fact as were properly included in his application for rehearing or in the complete record of the department, but no more.

The majority opinion correctly observes that, in the present case, we are not concerned with appeals under Rem. Rev. Stat., § 7683 [P. C. § 3477], which relates to injuries occasioned by the absence of any safeguard or protection required to be provided or maintained pursuant to any statute, ordinance, or departmental regulations under any statute.

The majority opinion states:

"In the absence of a bond superseding the order of which the employer complains in the case at bar—in view of Rem. Rev. Stat., § 7697, granting the right of appeal but denying the right to supersede the order— relator may enforce payment by writ of mandamus."

A careful reading of Rem. Rev. Stat., § 7697, compels the writer to conclude that this statute does not so provide.

Rem. Rev. Stat., § 7697, provides in part:

". . . No bond shall be required on such appeal or on appeals to the supreme court, except that an appeal by the employer from a decision of the department under section 7683 shall be ineffectual unless, within five days following the service of notice thereof, a bond, with surety satisfactory to the court, shall be filed, conditioned to perform the judgment of the court. Except in the case last named an appeal shall not be a stay. . . ."

This statute expressly provides that no bond shall be required upon appeal from the final order of the joint board except when a situation arises under Rem.

Rev. Stat., § 7683, which is admittedly not involved here.

It does not follow that, because Rem. Rev. Stat., § 7697, does not require the execution of a supersedeas bond, the execution of such a bond is a necessary condition precedent to the perfecting of this appeal. The act is complete in itself and does not depend upon the general statutes relative to civil actions and appeals. The legislature, in providing that no supersedeas bond was necessary, reasonably and properly concluded that the hazards and uncertainty attendant upon purely private litigation were not present in cases in which the disbursements were to be made through the department of labor and industries under the act.

It will be admitted that an administrative body may be empowered to render a final decision without a right of appeal to the courts in the absence of fraud or some flagrant irregularity. Nevertheless, Rem. Rev. Stat., § 7697, expressly gives the employer the right to appeal to the courts, and this court held in the case of *Mud Bay Logging Co. v. Department of Labor & Industries,* 189 Wash. 285, 64 P. (2d) 1054; id., 193 Wash. 275, 75 P. (2d) 579, that the employer has a right to appeal from the order of the joint board to the superior court, and from that court to this court.

The respondent, however, contends that the department, after an appeal has been taken, is ousted of jurisdiction and can make no valid and enforcible order until the matter has been adjudicated by the courts, and then only such order as the courts may direct.

Speaking on this subject, 38 C. J. 572 has the following to say:

"It has generally been held that the pendency of another action between the same parties and involving the same questions operates as a bar to the issuance of a writ of mandamus, unless it will be ineffec-

tive, or the other court is without jurisdiction, or will not result in a complete adjudication of the questions involved. So it has been held that where the act to be compelled is involved in a pending appeal, or certiorari, the writ will be refused."

See, also, *State ex rel. Kinnear v. Bridges,* 21 Wash. 591, 59 Pac. 487; *Denison v. Sheppard,* 122 Tex. 445, 60 S. W. (2d) 1031; *State ex rel. Peacock v. Latham,* 125 Fla. 69, 169 So. 597; *Keyston v. Banta-Carbona Irr. Dist.,* 19 Cal. App. (2d) 384, 65 P. (2d) 371; *State ex rel. Julian v. Board of Metropolitan Police Com'rs,* 170 Ind. 133 (138), 83 N. E. 83; *Lillie v. Auditor General,* 173 Mich. 538, 139 N. W. 260; *State ex rel. Chicago, B. & Q. R. Co. v. North Lincoln Street R. Co.,* 34 Neb. 634, 52 N. W. 369; *State ex rel. Wahl v. Speer,* 284 Mo. 45, 223 S. W. 655.

The Kentucky statutes, § 4935, provide for an appeal by a petition for review filed in the circuit court, and that the workmen's compensation board as well as the adverse parties in interest shall be made respondents; that summons shall issue upon the petition directing the adverse parties to file answer and directing the board to certify its complete record of the case to the court, and except misconduct or fraud is charged, the circuit court shall hear the cause upon the record or abstract thereto as certified by the board.

Construing this statute, the supreme court in the case of *Farmer Motor Co. v. Smith,* 249 Ky. 445, 60 S. W. (2d) 929, said:

"After an appeal is perfected pursuant to the statute, supra, the board's jurisdiction, right, or authority to take any further steps in the case ceases, while pending appeal. . . .

"The board may upon its own motion under section 4902, Kentucky Statutes, review its award or order as authorized by the statute, supra, but this does not mean that it may do so while the action is pending on

appeal. When an appeal is taken from any tribunal, it then loses jurisdiction to further act."

Speaking upon the subject of a commission's jurisdiction to act while an appeal is pending in the courts, the supreme court of Oklahoma, in the case of *Scruggs Bros. & Bill Garage v. State Industrial Commission,* 94 Okla. 187, 221 Pac. 470, said:

". . . although the Industrial Commission has and retains general jurisdiction over cases arising under the Workmen's Compensation Law, yet, when once the commission has made a finding, or an award, and a petition has been filed in the Supreme Court to review such finding or award, the commission is thereby ousted of its jurisdiction over the particular matter involved in the appeal. The award from which the appeal is prosecuted must stand or fall upon the trial in the appellate court and is not subject to change pending the appeal."

The supreme court of Oregon considered the question in the case of *Maroulas v. State Industrial Acc. Commission,* 117 Ore. 406, 244 Pac. 317, and stated as follows:

"We do not think that the statement of the issue here as placed by plaintiff and quoted above is correct. When an appeal has been taken from the decision of the State Industrial Accident Commission, it ceases to be clothed with discretion in the matter of the claim and becomes an actor: *Butterfield v. State Industrial Acc. Com.,* 111 Or. 149 (223 Pac. 941, 226 Pac. 216). The matter in controversy has been removed from the Commission to court. When the jurisdiction of the court has attached, the Commission has no more control over the controversy than has any other litigant in court."

Of like import are *Beronio v. Industrial Acc. Commission,* 86 Cal. App. 588, 260 Pac. 1104, and *Hailey-Ola Coal Co. v. State Industrial Commission,* 123 Okla. 64, 251 Pac. 1040.

We said in *Albrecht v. Department of Labor & Industries*, 192 Wash. 520, 74 P. (2d) 22:

"The right of appeal is purely statutory, and is subject to all of the limitations and restrictions imposed by the statutes which define the right. The statute provides that any claimant, employer, or other person who is aggrieved by any order, decision, or award made in the first finding of the department of labor and industries—that of the supervisor who makes the first findings, orders, and awards for the department—must, as a condition precedent to his appeal to the court, first appeal to the joint board; that is, the joint board is the appellate tribunal of the department of labor and industries. In that tribunal is heard the appeal of those aggrieved by any order, decision, or award made by the supervisor.

"There is no provision in the statute authorizing an appeal to the joint board after it has made its final order upon an appeal from the supervisor; when the joint board hears an appeal on the question presented and makes a final order on the merits of the case, that case is closed. The only remedy of one aggrieved by that order is an appeal to the superior court."

Upon taking an appeal from an order of the joint board, the department is divested of jurisdiction to make any orders concerning the claim, its payment, or its rejection, in so far and to the extent that the amount of the award is disputed.

The writer is concerned about the result of the holding that requires the payment of a claim pending appeal. If upon appeal by an employer the courts should hold that the employee was not entitled to recover, the department would be in the position of having been required to pay a spurious claim or one not compensable under the act, without the right to charge it to any fund or to replace the payment already made by additional assessments against the appellant employer or those in his class. The funds provided for

by the workmen's compensation law are only exacted from employers on the basis of the need of the workmen under the act who are injured.

The base rate paid by the employers is fixed by statute. The amount exacted from them is computed on the need of the injured workmen who fall within the purview of the act. It cannot be enlarged to pay injured workmen not falling within the scope of this statute.

Hence, in the case at bar, if the claim is paid now and the court should decide upon the pending appeal that relator was not injured, or, if injured, his claim were not compensable under the act at the time of his injury, surely the amount so paid could not be charged against the employer's cost experience or the base rate of employers in that class. The depletion of the fund would only affect those employees under the act who are actually injured.

Relator relies upon *State ex rel. Crabb v. Olinger, supra,* in support of his contention relative to the effect of the stay provision, but the question presented here was neither briefed nor decided in that case. We simply held that the stay provision of Rem. Rev. Stat., § 7697, had no application to rehearings before the joint board.

The writer is of the opinion that the sentence "except in the case last named an appeal shall not be a stay" in Rem. Rev. Stat., § 7697, was intended to be restricted in its application to Rem. Rev. Stat., § 7683. It simply means that, unless a bond is given within five days following service of notice of appeal, such appeal shall not operate as a stay of the order made by virtue of the authority of that section.

The stay provision must be given a reasonable construction so as to harmonize it with the other provisions of the act.

"It is to be presumed that all the subsidiary provisions of an act harmonize with each other, and with the purpose of the law; if the act is intended to embrace several objects, that they do not conflict. Therefore it is an elementary rule of construction that all the parts of an act relating to the same subject should be considered together, and not each by itself. By such a reading and consideration of a statute its object or general intent is sought for, and the consistent auxiliary effect of each individual part. Flexible language which may be used in a restricted or extensive sense will be construed to make it consistent with the purpose of the act and the intended modes of its operation as indicated by such general intent, survey and comparison—*ex antecedentibus et consequentibus fit optima interpretatio.*" 2 Lewis' Sutherland Statutory Construction (2d ed.), 659, § 344.

"It is the general rule that all the provisions of an act must be considered in their relations one to the other, and a construction placed thereon which will harmonize all, if possible, and give effect to all." *Hansen v. Harris,* 123 Wash. 109, 212 Pac. 171.

It is impossible to harmonize all of the provisions of the workmen's compensation act with the sentence "except in the case last named an appeal shall not be a stay" when it is construed to apply to the general provisions of the act relative to appeal.

In the writer's opinion, the requirement of the payment of claims would nullify the provisions of the statute and the holding of this court guaranteeing to the employer the right of appeal and the declaration that no awards for injuries may be paid out of the fund until they have been established by the procedure provided in the act.

In the event, however, the stay provision is to be construed as applicable to the entire act, then the only conceivable construction which renders it harmonious with the other provisions of the act is to admit that the part of a claim may be paid to the workman when

that portion of the allowance is not disputed by the appeal.

In the case at bar, it appears that not a portion of the award was controverted, but the entire award was contested by the employer; and the order of the joint board was appealed from in its entirety.

The majority holds that the contributions paid under the workmen's compensation act is a license tax, citing *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466. It is true that reference was made to that question in *Mountain Timber Co. v. Washington,* 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260, Ann. Cas. 1917D, 642, citing the *Clausen* case, *supra.* It will be observed, however, that, in that case, the court did not hold the charge laid upon persons engaged in industries either named in the act or that could be brought under the act, constituted a license tax, but rather that it partakes of the nature of a license tax.

A tax is defined in 26 R. C. L. 13, to be:

". . . an enforced contribution of money or other property, assessed in accordance with some reasonable rule of apportionment by authority of a sovereign state on persons or property within its jurisdiction, for the purpose of defraying the public expenses."

The definition of a license tax is contained in 17 R. C. L. 475, as follows:

"A license tax is one imposed on the privilege of exercising certain callings, professions, or vocations, that, when collected, goes into the public treasury, and, when applied to municipal taxations, is termed a 'license fee.'"

The amounts collected by the department pursuant to provisions of the workmen's compensation act are not taxes, and we have not so held. Such sums are merely sums of money collected by a governmental agency and paid into a trust fund for the sole benefit

of those injured workmen falling within the act. The assessments made have none of the characteristics of a license tax. In this connection, we said in *State ex rel. Trenholm v. Yelle,* 174 Wash. 547, 25 P. (2d) 569:

"These funds are therefore trust funds drawn from particular sources and devoted to special purposes. By the act itself, the fund is impressed with a trust.

" 'The fund thereby created shall be termed the "accident fund" which shall be devoted to the purpose specified for it in this act.' Rem. Rev. Stat., § 7676. Re-enacted in Chapter 193, Laws of 1933, p. 925, Rem. 1933 Sup., §7676. . . .

"If the administrative method and the procedure prescribed by the workmen's compensation act be interfered with, the whole purpose of the act may be destroyed. If the legislature may at will appropriate moneys out of those funds regardless of the procedure established by the act, then the act will have lost its effect, and its purpose will be to that extent defeated. The rights of both employer and employee, with reference to the trust funds and their application, will be jeopardized. Those charged with the collection of premiums for the maintenance of the accident fund will have no way of determining what rates shall be fixed or charged. Those who may be entitled to share in the fund by proper procedural compliance will be placed at a disadvantage if the fund be depleted through outside interference. And finally, the legislature will have supplanted the courts as the final arbiter of the legitimacy of claims."

The state compels payments by virtue of the exercise of the police power to regulate industry as distinguished from the exercise of the taxing power. The sums paid by the employers are not paid into the treasury for the benefit of the state government as such.

Since the contributions paid under the workmen's compensation act are not taxes, the case of *State ex rel. Weyerhaeuser Timber Co. v. State Tax Commission,* 189 Wash. 56, 63 P. (2d) 494, is inapplicable here.

The department having been divested of the jurisdiction over the claim to the extent that the award was contested by reason of the appeal to the courts, and since the employer has been given the right to appeal to the courts from the order of the joint board, and, further, since the cause is triable *de novo* upon the department record by express legislative mandate, the court should give that effect to the act of the legislature which will make all of its provisions workable.

We come now to the contention of whether the relator is entitled to a writ of mandate.

The right of this court to entertain a writ of mandate does not appear to have been raised in *State ex rel. Crabb v. Olinger,* 191 Wash. 534, 71 P. (2d) 545, but it is challenged in the application for the writ in the present proceedings.

Rem. Rev. Stat., § 7697, provides:

"Within thirty days after the final order of the joint board upon such application for rehearing has been communicated to such applicant, or within thirty days after rehearing is deemed denied as herein provided, such applicant may appeal to the superior court of the county of his residence, . . ."

In *Maddox v. Industrial Ins. Commission,* 113 Wash. 137, 193 Pac. 231, we said:

"Appellant had no cause of action of which the court had original jurisdiction. *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, 2 N. C. C. A. 823, 3 N. C. C. A. 599; *State v. Timber Mountain Co.,* 75 Wash. 581, 135 Pac. 645, L. R. A. 1917D 10, 4 N. C. C. A. 811. The commission had exclusive jurisdiction and appellant had only the right of appeal from its order."

In *State ex rel. Hawksworth v. Clifford,* 130 Wash. 103, 226 Pac. 272, we stated:

"It is plain to us that the error about which relator complains concerns 'the proper application of the pro-

visions of this act' as provided by the statute, and that she had a right of appeal. It seems plain, also, that this right of appeal afforded a complete and adequate remedy, because the statute expressly provides that on appeal 'full opportunity to be heard shall be had before judgment is pronounced.' By appeal relator could have raised every question she here raises and the court would have been bound to give a decision on such questions. We have many times held that where there is a right of appeal given by statute and such appeal is an adequate remedy, we will not exercise our jurisdiction to issue writs of mandamus, certiorari or prohibition."

In *State ex rel. Ottesen v. Clausen,* 124 Wash. 389, 214 Pac. 635, this court observed:

"There is an abundance of authority cited to sustain the rule found in 18 R. C. L., Mandamus, p. 101, § 15, as follows:

" 'Though the state courts of last resort are given original jurisdiction to issue writs of mandamus, and under such a grant have in many instances exercised such jurisdiction frequently without their jurisdiction being questioned, it does not follow that such courts whose principal function is to exercise appellate or supervisory jurisdiction will assume original jurisdiction in all cases in which their aid may be sought and which otherwise may be a proper case for the use of the remedy. And in this connection the established rule seems to be that as original jurisdiction is conferred in order that the court of highest authority in the state should have the power to protect the rights, interests, and franchises of the state, and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large, and, in emergency (of which the court itself is to determine), to assume jurisdiction of cases affecting local public interests, or private rights, where there is no other adequate remedy, and the exercise of such jurisdiction is necessary to prevent a failure of justice, the court is vested with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call

for the exercise of its original jurisdiction. And some courts say that original jurisdiction should not be assumed except in cases affecting the sovereignty of the state, its franchises, or prerogatives, or the liberties of its people, or in exceptional cases where a failure to take jurisdiction would amount to a denial of justice and only when the interest of the state at large is directly involved, and where such interest is the principal, and not a collateral, question.' "

The writer is of the opinion that the writ should not issue in this case for the reason, first, that, when his case was appealed to the superior court, the department lost jurisdiction to make the payment provided for by the joint board, and, second, that the relator has a plain, speedy and adequate remedy by appeal.

I therefore dissent.

ROBINSON, J., concurs with SIMPSON, J.

STEINERT, C. J. (concurring with the minority)—I concur in all that is said in the dissenting opinion of Judge Simpson. I desire, however, to emphasize that portion of the dissent which points out that the contributions paid by the various employers into the accident fund are not, as intimated in the opinion written by Judge Millard, license taxes exacted of employers for the mere privilege of engaging in business. On the contrary, they are contributions required of and paid by those engaged in extrahazardous industries to meet the burden resting upon them of carrying the greater part of the cost of accidents occurring in such industries; and, when so paid, these contributions constitute trust funds to be devoted to the purposes specified by the workmen's compensation act. The distinction between these two concepts is very important.

If these contributions be considered merely as "license taxes," then, obviously, the employer is concerned only with the payment of his "tax" in order

to engage in business, and he is in no way concerned with the manner in which such "taxes" are disposed of or distributed by the department among injured employees. The only question that the employer could raise, under that theory, would be whether the tax was reasonable. But the workmen's compensation act by its terms discloses beyond any question of doubt that the employer has a very vital interest in the administration of the accident fund, and that he has the right to be heard before the department and in court upon every claim made by a workman. The employer is not a mere licensee under the act; he is in the position of an assured who, for the premiums that he pays, is entitled to have every just claim arising under the act compensated out of the fund and every spurious claim rejected.

I emphasize this phase of the case because the theory of Judge Millard's opinion is that, since the employer's connection with the workmen's compensation act is merely by virtue of a taxing process, he therefore does not have an appeal to the courts as a matter of right, but only as a matter of grace; and that, since under the language of the statute the appeal granted to the employer does not operate as a stay, therefore the compensation awarded by the joint board must be paid without regard to the question whether the appeal of the employer may be successful. With that reasoning I do not agree.

This same theory was expounded at length in a dissenting opinion written by Judge Blake in the case of *Mud Bay Logging Co. v. Department of Labor & Industries,* 193 Wash. 275, 75 P. (2d) 579, and was adopted by three of the judges sitting in that case. The other six judges declined to accept that theory. In the case now before us, four judges appear to subscribe to that doctrine; two, however, have merely concurred

in the result; and the other three, of whom I am one, have dissented. I take it, therefore, that, regardless of the result of this case, the theory upon which the four-judge opinion here is written has not been accepted by a majority of the members of this court. I am moved to register my disapproval of that theory because of the serious consequences which I apprehend would follow if it should be accepted by this court. If that should be the law, then the only right that the employer would have under the act would be that of paying the bills incident to the maintenance of the fund.

One other matter appearing in the opening opinion should be noted. It is there said:

"If the employer is successful upon its appeal, the employer will then have the right to require charged off of its cost experience any disbursement made to the claimant."

If this be a correct statement, which I think it is, then the department can never safely allow any claim in a case in which the employer takes a position contrary to the employee, for, having once allowed the claim, the department can, as Judge Millard's opinion now holds, be compelled to pay it at once; but, having paid the claim, the department runs the risk of having any disbursement charged off the employer's cost experience, with no chance of getting back the money from the claimant in the event the case is reversed on the employer's appeal. This is a situation that does not augur well in the future for either the department or for injured employees.

I dissent.