[No. 29388. *En Banc.* February 24, 1945.]

BOEING AIRCRAFT COMPANY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

[1]Reported in 156 P. (2d) 640.

*Holman, Sprague & Allen* and *J. Paul Coie,* for appellant.

*The Attorney General* and *L. E. O'Neill, Assistant,* for respondent Department of Labor and Industries.

*Allen, Hilen, Froude & DeGarmo* and *Tim Healy,* for respondent Armour & Co.

*W. S. Greathouse,* for respondent Frye & Co.

*Almon Ray Smith,* for respondent James Henry Packing Co.

*Preston, Thorgrimson, Turner, Horowitz & Stephan,* for respondent Diamond Tank Transport, Inc.

MILLARD, J.—An airplane which was constructed in the plant of Boeing Aircraft Company, while on a trial flight February 18, 1943, in sole charge of employees of the aircraft company, crashed onto the meat-packing plant of Frye & Company at Seattle, Washington. As a result of the crash and the immediately ensuing fire, all of the members of the crew of the airplane and twenty employees of Frye & Company were killed and twelve were injured. Claims by dependents of those workmen who had suffered death and claims by injured workmen were filed with the department of labor and industries of this state and were allowed in varying amounts.

Boeing Aircraft Company and Frye & Company were employers engaged in extrahazardous industry under the state

workmen's compensation act, and at the time of the accident the employees of both companies were engaged in extrahazardous employment. The aircraft company was a contributor to the industrial insurance fund under class 34-3 as a manufacturer of airplanes. Frye & Company and the other interveners were contributors to the industrial insurance fund as members of class 43-1. The aircraft company and interveners had paid all payroll premiums due and had fully complied with the requirements of the industrial insurance statute.

The director of the department of labor and industries directed the supervisor of industrial insurance, March 20, 1943, to transfer all charges for death and injuries suffered by Frye & Company employees from the meat-packing industry, class 43-1, to the airplane manufacturing industry, class 34-3, to which latter class Boeing Aircraft Company was the sole contributor.

Frye & Company's meat-packing plant, which was the scene of the accident, is located in the southern portion of the city of Seattle, two or three miles north of Boeing Aircraft Company's manufacturing plant. There has never been any factual or legal relationship between Boeing Aircraft Company and Frye & Company, each company being engaged in an industry entirely different from that in which the other is engaged.

June 14, 1943, the joint board of the department, before which the matter was brought upon the aircraft company's objection to the order to transfer charges for deaths and injuries suffered by Frye & Company's employees to the airplane manufacturing industry, sustained the ruling of the director. From that order, the aircraft company appealed to the superior court for King county, whereupon Frye & Company, by leave of court, intervened in the proceeding, as did Armour & Company, a corporation engaged in the business of packing meat, and four other corporations belonging to the same classification. The interveners were interested in the proceeding by reason of the fact that, if the cost of the accident were charged by the department

to class 43-1, they would all be required to bear proportionate parts of the payments to the fund.

Trial of the cause to the court resulted in entry of a judgment confirming the order of the joint board, which affirmed the order of the director of the department charging class 34-3 with the workmen's compensation costs of the accident and dismissing the appeal of the aircraft company from the order above described. Boeing Aircraft Company appealed.

At the threshold of this appeal is the motion of respondents Frye & Company and James Henry Packing Company to strike the statement of facts for the reason that same was not filed in the office of the clerk of the superior court until the ninety-first day after the entry of the judgment from which the appeal is prosecuted, or one day too late.

It is not material whether the motion to strike the statement of facts is granted, as a statement of facts is not necessary in cases of this character. Under the statute (Rem. Rev. Stat., § 7697 [P. C. § 3488]) we held in *Murray v. Department of Labor & Industries*, 151 Wash. 95, 275 Pac. 66, and *Dry v. Department of Labor & Industries*, 180 Wash. 92, 39 P. (2d) 609, that an appellant would not be permitted on the hearing in the superior court to offer, and the court was forbidden to receive in support of the appeal from the department, evidence or testimony other than, or in addition to, that offered before the joint board or included in the record filed by the department. The departmental record was duly filed in the superior court and, upon appeal from the department, became a part of the record therein. It is properly in the record before this court to which it was brought as a part of the transcript on appeal.

We held in *Reid v. Department of Labor & Industries*, 194 Wash. 108, 77 P. (2d) 589, where, as in the case at bar, it appeared that the cause was submitted to the trial court upon the departmental record, that we had before us all the evidence upon which the court functioned, therefore no statement of facts was necessary. One year subsequent to the filing of our opinion in *Reid v. Department of Labor & Industries, supra,* the legislature enacted a statute (Laws

of 1939, chapter 184, p. 579, Rem. Rev. Stat. (Sup.), § 7697-2 [P. C. § 3488-21]) which provides that, in appeals to the superior court from any order, decision or award of the joint board of the department of labor and industries, no party to the appeal shall be permitted to introduce evidence in court in addition to that contained in the departmental record. The statute prohibits the introduction of any evidence by any party upon the trial in the superior court, hence we have before us all the evidence upon which the court could legally function.

As the only facts that may be considered are in the departmental record, which is before this court, a statement of facts is unnecessary to enable us to consider questions of fact; and, in any event, the sole question raised by this appeal is one of law. It is clear that the conclusions of law and the judgment are not supported by the findings of fact, which are as recited herein.

Certain employees of Frye & Company, a corporation within the extrahazardous employment classification, were killed and others injured as the result of the crashing onto the plant of Frye & Comany of an airplane belonging to and under the control of Boeing Aircraft Company, a corporation, which was also within the extrahazardous employment classification. Both corporations had complied with provisions of the workmen's compensation act, which affords an employer immunity from suit by a workman injured while in the course of extrahazardous employment. Under the foregoing facts, should the cost experience of the accident be charged to Frye & Company, the employer of the workmen killed or injured, and its class of employers, or to the third-party employer, appellant aircraft company and its class?

■ It is clear from a reading of the workmen's compensation act and our opinions interpreting same that every hazardous industry within the purview of the workmen's compensation act should bear the burden arising out of injuries to its employees regardless of the cause of injury, and that it was never contemplated that each class should be liable for the accident caused by such class, but that

each class as the statute provides shall meet and be liable for the accidents occurring in such class.

Industrial insurance was introduced into our statutory law by Laws of 1911, chapter 74, p. 345, which is an act relating to compensation of injured workmen. Section 1 of the statute cited declares the act to be an exercise of the police and sovereign power of the state and recites the unfortunate conditions which demanded remedial action by the legislature. The statute was first considered by us in *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, in which we said, on page 175 of our opinion, that the act was founded on the basic principle that certain defined industries, designated in the act extrahazardous, should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and that the purpose of the act was to furnish a remedy which would reach every injury sustained by a workman engaged in any of such industries and make a sure and certain award therefor, bearing a full proportion to the loss sustained, regardless of the manner in which the injury was received.

In *State v. Mountain Timber Co.,* 75 Wash. 581, 135 Pac. 645, we held that the workmen's compensation act was constitutional. The United States supreme court in *Mountain Timber Co. v. State,* 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260, Ann. Cas. 1917D, 642, affirmed our decision.

In *Stertz v. Industrial Ins. Commission,* 91 Wash. 588, 594, 158 Pac. 256, Ann. Cas. 1918B, 354, after stating that our act was one of the most liberal in scope of all forms of compulsory insurance we said:

"Ours is not an employer's liability act. It is not even an ordinary compensation act. It is an industrial insurance statute. Its administrative body is entitled the industrial insurance commission. All the features of an insurance act are present."

The statute (Laws of 1911, chapter 74) as originally adopted provided that each workman who was injured, "whether upon the premises or at the plant, or, he being in the course of his employment, away from the plant of

his employer" was entitled to compensation. In *Stertz v. Industrial Ins. Commission, supra,* we permitted recovery in the case of a foreman on a logging train who was shot by a discharged employee of the logging company. We stressed the importance of the concept of liability imposed on the employer, *regardless of fault,* in the following language:

"For instance, let a machine which was excellently made, excellently inspected, and excellently operated cause injury by capricious action contrary to all human experience, in a word let nobody be to blame, a servant under the common law could not recover for the master had not been at fault. Yet that this act means to give compensation in just such a situation can never be questioned. We start accordingly with liabilities before unknown, 'a sure and certain relief for workmen regardless of questions of fault.' "

It will be observed from a reading of that opinion that we were of the view that the legislature deliberately avoided the qualification upon recovery that injury "must arise out of the employment."

In the original statute (Laws of 1911, chapter 74, pp. 346, 349, § 3), it is provided

" . . . That if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, . . . "

The foregoing proviso was not changed until 1927, when by Laws of 1927, chapter 310, § 2, p. 816, the portion of § 3 of the original statute reading "occurring away from the plant of his employer" was deleted. In 1929, the statute (Laws of 1929, chapter 132, p. 327, Rem. Rev. Stat., § 7675 [P. C. § 3470]) was amended by the addition of a proviso to the proviso as follows:

"That no action may be brought against any employer or any workman under this act . . . if at the time of the accident such employer or such workman was in the course of any extrahazardous employment under this act."

By reason of the foregoing limitation, the injured workmen or dependents of deceased employees of Frye & Company had no right of action against appellant aircraft company. The claims of those employees or their dependents were allowed under the act without challenge and are not in any way material to the question presented by this appeal. The fact that the injury or death to employees of Frye & Company did not "arise out of" any hazard inherent in the meat-packing industry, would not be a logical basis for denial of compensation awards. It is sufficient that they were injured in the course of their employment.

Since 1911, § 4, p. 352, of the original statute, and now found in Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471], has never been substantially amended and now reads as follows:

"For the purpose of such payments into the accident fund, accounts shall be kept with each industry in accordance with the classification herein provided and no class shall be liable for the depletion of the accident fund from accidents happening in any other class. Each class shall meet and be liable for the accidents occurring in such class. The fund thereby created shall be termed the 'accident fund' which shall be devoted to the purpose specified for it in this act."

In 1931, the legislature, without alteration in any way of the foregoing provision, provided a more detailed basis for computing the premium contributions of the employers to the accident fund. For the first time since the adoption of the act in 1911, the department was required to take into account, as one consideration in arriving at a given class premium, the cost experience of such employer and the class to which he contributed and:

". . . in so computing the cost experience of any employer the fixed sum of four thousand dollars ($4,000) shall be charged against his experience for each injury resulting in the death or total permanent disability of a workman instead of the actual cost to the accident fund of such injury. The actual rate or per cent of payroll which any employer shall be required to pay for the accident fund shall be twenty-five per cent (25%) of the basic rate, plus seventy-five per cent (75%) of the employer's cost rate for each one hundred dollars ($100) of payroll over the

two year period next preceding the then last September first, but in no case shall the total rate exceed one hundred seventy-five per cent (175%) of the basic rate. If any employer shall operate more than one plant or establishment a premium rate shall be determined for each plant or establishment according to its experience cost." Laws of 1931, chapter 104, p. 299.

By Laws of 1937, chapter 89, p. 347, the fixed sum was increased to forty-five hundred dollars, which amount was to be charged to the employer's cost experience at the time of the accident in question.

"The actual premium rate which any employer shall be required to pay for the accident fund shall be forty per cent (40%) of the basic rate, plus sixty per cent (60%) of the employer's cost rate for each workman hour reported by him during each fiscal year over the five-year period next preceding the then last September first, but in no case shall the total rate exceed one hundred sixty per cent (160%) of the basic rate."

By the workmen's compensation act, all common-law forms of action which might arise by reason of an injury to an employee while in the scope of his employment in extrahazardous industry were abolished; however, certain statutory causes of action were specifically created by the workmen's compensation statute. *Denning v. Quist,* 160 Wash. 681, 296 Pac. 145. From 1911 to 1927, an employee who was injured at the plant of his employer did not have a cause of action against either his employer, unless the latter was in default under the workmen's compensation statute, or any negligent third person. *Robinson v. McHugh,* 158 Wash. 157, 291 Pac. 330.

From 1927 to 1929, an injured employee had an election, if injured as a result of the negligence of another person not in the same employ, to take under the statute or to sue such negligent third person. In 1929, this statutory right of action against third persons was withdrawn as against workmen or employers likewise engaged in extrahazardous industry and contributors to the accident fund. Laws of 1929, chapter 132, p. 327.

In *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, the principle of the workmen's compensation act that each industry shall bear its own losses is stressed. In *Zappala v. Industrial Ins. Commission,* 82 Wash. 314, 144 Pac. 54, L. R. A. 1916A, 295, it will be noted that we again emphasized the principle embodied in the workmen's compensation act that every hazardous industry within the purview of the act should bear the burden arising out of injuries to its employees regardless of the cause of the injury. See, also, *Peet v. Mills,* 76 Wash. 437, 136 Pac. 685, L. R. A. 1916A, 358, and *Pacific Iron & Metal Co. v. Department of Labor & Industries,* 13 Wn. (2d) 419, 125 P. (2d) 301.

The ruling of the director, which was affirmed by the judgment of the trial court, injects into this principle an added consideration which has no place in the workmen's compensation statute. The statute provides that each class shall meet and be liable for the accident occurring in such class. The director of the department and the trial court, it is evident, were of the view that, appellant aircraft industry having caused the accident, the accident occurred in the aircraft industry; that is to say, by such construction the director of the department and the trial court have amended the statute to provide that each class shall meet and be liable for the accident caused by such class.

This is in contravention of the statute. Had the legislature intended that causation should be the basis for charging the accident fund with the costs of an accident, it would have accomplished such result by substituting the language "caused by any other class" instead of "happening in any other class." The statute plainly provides that no class shall be liable for the depletion of the accident fund from accidents happening in any other class. The fact that many employees were killed and injured by the crashing of appellant's airplane onto the plant of Frye & Company, does not warrant the assertion of the director of the department that the situation was without precedent, nor does it lend comfort to the trial court in its observation that the director's duty was rendered more difficult by the rea-

son of the great loss of life and by reason of the absence of clear precedent by which to guide the director's official action.

As argued by counsel for appellant, there have been other cases of injury to workmen under the statute as the result of the negligence of third parties. See *Robinson v. McHugh, supra; Denning v Quist, supra; Weiffenbach v. Seattle,* 193 Wash. 528, 76 P. (2d) 589; and *Koreski v. Seattle Hardware Co.,* 17 Wn. (2d) 421, 135 P. (2d) 860. The statute does not authorize, nor are we aware of any opinion of this court authorizing, abandonment of the prior practice of charging the cost of an injury to the class of an employer whose workman was injured or killed. The practice of charging the cost experience of the employer whose workman was injured or killed, and the class fund to which he contributed irrespective of cause, has been uniformly accepted by prior directors and industry as the correct interpretation to be placed upon this statutory mandate.

While the director did not, nor did the court, state that the transfer of charges against appellant's cost experience was based upon negligence or absolute liability, it is patent that the director and the court were of the view that the department of labor and industries was clothed with authority to proceed upon the principle that justice so demanded merely because of the magnitude of the catastrophe. The workmen's compensation statute does not grant any such authority to the director or to the department itself.

We referred above to the statute (Laws of 1931, chapter 104, p. 297, Rem. Rev. Stat., § 7676) which provides a method of computing each class and sub-class premium by taking into consideration each employer's previous five-year class cost experience and the previous two-year class cost experience, as well as the then condition of the class fund. Individual employers, by reason of their cost experience, may be assessed higher premium rate than the basic rate for the class in which they are contributors. In *State ex rel. Crabb v. Olinger,* 196 Wash. 308, 82 P. (2d) 865, we stated that this "merit system" was established for

the purpose of more nearly providing that each employer shall bear the cost of accidents *in his own plant.*

A reading of the entire statute will disclose that the responsibility of the employer is predicated upon and related to his own workmen. The statute (Rem. Rev. Stat. (Sup.), § 7676) requires each employer under the act to make a monthly payroll report showing the aggregate number of workmen hours during which workmen were employed *by him* etc., and each employer is required to pay a certain number of cents for each man hour worked by the workmen *in his employ.* The conclusion of the trial court that the statute requires the charging against the employer's experience who was primarily responsible for its occurrence, is not sound.

As stated above, prior to 1927, an employee injured at his employer's plant had no right of action against any third person. From 1927 to 1929, the employee covered by the act, if injured either away from or at the plant, could elect to take under the statute or sue a negligent third party. Since 1929, an injured employee could sue a negligent third person only if such person was not an employee or employer under the coverage of the statute. In *State v. Cowlitz County*, 146 Wash. 305, 262 Pac. 977, the employee elected to take under the statute, then assigned his cause of action to the industrial insurance commission. The state thereupon brought an action to recover over against Cowlitz county in the amount by which the accident fund had been depleted. The state prevailed. That recovery was doubtless credited back to the class account of the employer involved, and such class therefore suffered no cost experience by reason of the accident.

In 1929, this privilege was withdrawn as to other workmen and the employers likewise under the statute. Industry acquired, under the 1929 statute, an immunity from common-law actions with potentially larger damage claims in exchange for its assumption, in the aggregate, of limited responsibility to its employees without fault. *Weiffenbach v. Seattle, supra.* If a truck operated by an employer in the meat-packing industry is the cause of an injury to an

employee in another extrahazardous industry, the employer in the meat-packing industry would nevertheless be immune from common-law liability.

Under the workmen's compensation act, all civil causes of action for personal injuries sustained in an industrial accident arising out of extrahazardous employment are abolished except in those cases where the act expressly preserves or creates a right of action; and in such cases the rights of action are purely statutory, and not common-law, rights. An employer who complies with the terms of the workmen's compensation act is entitled to all of its benefits, including immunity from liability for negligently injuring the employee of another employer. A workman, under the workmen's compensation act at the time he was injured through the negligence of an employee of another company, may not maintain an action against the company the negligence of whose employee or employees caused the injuries, where that company had complied with the provisions of the act which affords immunity from suit in such circumstances. *Koreski v. Seattle Hardware Co., supra.*

As there is no protection granted to the members of one class from the negligence or carelessness of a fellow member of that class, so there is no protection from the effects of negligence of one industry upon another and unrelated industry. That this result was intended by the legislature, is clear from the unambiguous language of the proviso (Rem. Rev. Stat., § 7675) which prohibits an employee under the act from bringing an action for injuries received at the hands of a third party if that party is an employer under the act. The position of respondents that the limitation against suing employers under the act (Laws of 1929, p. 325) is not applicable to the facts in the case at bar, for the reason that appellant is not being sued, is not tenable. The inescapable consequence of the 1929 amendment may not be ignored. Until the amendment of 1929, the injured workman had an election to take under the act or sue a third-party employer. If he elected to take under the act, the state as assignee could sue, but only to the extent that the accident fund had sustained a loss. If the argument of

respondents is correct, the state would not have had to sue as it did in *State v. Cowlitz County, supra,* but in the guise of ascertaining the *proper* class the state could have determined that Cowlitz county, while not the employer of the injured plumber, was, nevertheless, the employer whose cost experience was to be charged.

We reiterate that the statute is plain and unambiguous. The 1929 amendment repealed the right of a workman under the act to sue, or the state to sue as assignee, a third-party employer also under the act. Prior to 1929, the employer's cost experience was protected by his employee or the state, because any recovery against a third-party employer resulted in a credit back to the employer's class fund, thereby eliminating any cost experience which would otherwise accrue.

The director's ruling as affirmed by the joint board and the trial court is erroneous. The accident happened in both the meat-packing and airplane manufacturing classes. Each class under the statute must meet and be liable for the costs sustained in their respective classes. The transfer of the charges solely to the airplane manufacturing class is in contravention of the workmen's compensation statute.

The judgment is reversed, and the cause is remanded with instruction to the superior court to direct the director of the department of labor and industries to enter an order in harmony with the foregoing.

BLAKE, ROBINSON, SIMPSON, MALLERY, and GRADY, JJ., concur.

BEALS, C. J. (dissenting)—The question presented on this appeal may be stated as follows: Certain employees of Frye, an employer under and subject to the workmen's compensation act, were killed and others injured by an instrumentality belonging to and under the control of appellant Boeing, who was also an employer subject to and under the act. Both Boeing and Frye were in good standing with the department. Under these circumstances, should the cost experience of the accident be charged to Frye, the employer of the workmen killed or injured, and

its class of employers, or to the third party employer, appellant Boeing and its class? The exact question is apparently now presented to this court for the first time.

All claims on the part of dependents of Frye's employees who were killed and claims by the employees who were injured have been allowed, and we are not concerned with any question connected with the matter of benefits claimed under the act as the result of the accident.

It seems advisable to again briefly discuss the theory of our workmen's compensation statute, considering the same from a standpoint slightly different from our previous discussions of the act.

Industrial insurance was first introduced into our statutory law by chapter 74, p. 345, Laws of 1911, an act relating to the compensation of injured workmen. By § 1 the act was declared to be an exercise of the police and sovereign power of the state, the section also stating the unfortunate conditions which called for remedial action by the legislature. The act was first considered by this court in the case of *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N.S.) 466, in which the court said:

"It [the act] is founded on the basic principle that certain defined industries, called in the act extra hazardous, should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and its purpose is to furnish a remedy that will reach every injury sustained by a workman engaged in any of such industries, and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received."

The case cited was an original proceeding instituted in this court by way of an application for a writ of mandamus to require the state auditor to issue a warrant authorized by the act. The court concluded that the act violated no provision of the state or Federal constitution, and it was ordered that the writ issue.

The act was held constitutional by the supreme court of the United States in the case of *Mountain Timber Co. v. State,* 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260, Ann. Cas.

1917D, 642, affirming the decision of this court in the case of *State v. Mountain Timber Co.,* 75 Wash. 581, 135 Pac. 645.

In the case of *Stertz v. Industrial Ins. Commission,* 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B, 354, this court referred to the numerous features distinguishing the statute of this state from those then in effect in other states. In the course of the opinion, the court said:

"To resume, ours is not an employer's liability act. It is not even an ordinary compensation act. It is an industrial insurance statute. Its administrative body is entitled the industrial insurance commission. All the features of an insurance act are present. Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended. Let a claim be rejected by the commission, the latter and not the employer is to be sued. Nor is the commission so much as selected by the parties. The state administers the fund. Few foreign countries had yet adopted a scheme so comprehensive."

There inhered in the original act, and the principle has since been elaborated, the theory that rates paid by an employer under the act should bear some relation to his accident experience. In § 4 of the statute above cited is found the following:

"In that the intent is that the fund created under this section shall ultimately become neither more or less than self-supporting, exclusive of the expense of administration, the rates in this section named are subject to future adjustment by the legislature, and the classifications to rearrangement following any relative increase or decrease of hazard shown by experience. . . .

"If, after this act shall have come into operation, it is shown by experience under the act, because of poor or careless management, any establishment or work is unduly dangerous in comparison with other like establishments or works, the department may advance its classification of risks and premium rates in proportion to the undue hazard. In accordance with the same principle, any such increase in classification or premium rate, shall be subject to restora-

tion to the schedule rate. Any such change in classification of risks or premium rates, or any change caused by change in the class of work, occurring during the year shall, at the time of the annual adjustment, be adjusted by the department in proportion to its duration in accordance with the schedule of this section. If, at the end of any year, it shall be seen that the contribution to the accident fund by any class of industry shall be less than the drain upon the fund on account of that class, the deficiency shall be made good to the fund on the 1st day of February of the following year by the employers of that class in proportion to their respective payments for the past year."

By chapter 188, p. 677, Laws of 1915, the act was amended in several particulars, § 1 containing, *inter alia,* the following:

"In that the intent is that the fund created under this section shall ultimately become neither more nor less than self-supporting, exclusive of the expense of administration, the rates named in this section are subject to future adjustment by the industrial insurance department, in accordance with any relative increase or decrease in hazard shown by experience, and if in the judgment of the industrial insurance department the moneys paid into the fund of any class or classes shall be insufficient to properly and safely distribute the burden of accidents occurring therein, the department may divide, rearrange or consolidate such class or classes, making such adjustment or transfer of funds as it may deem proper."

By chapter 120, p. 482, Laws of 1917, the act was again amended, the following portion of § 2 indicating a legislative intent that contributions by employers of the respective classes more nearly conform to accident experience.

"The industrial insurance commission shall on or before the 30th day of September, 1917, and semi-annually thereafter make corrections of classifications as between classes of industries if and as experience shall show error or inaccuracy therein, and, under and conformably to the foregoing rule of classification and premium rating, shall at the same time lower the premium rate of any establishment or plant if and as experience shall show it to maintain such a high standard of safety or accident prevention as to differentiate it to that extent from other like establishments or plants, or shall raise the premium rate of any establish-

ment or plant if and as experience shall show it to maintain so low a standard of safety or accident prevention as to justly warrant its being subjected to that extent to a greater contribution to the accident fund."

By chapter 310, p. 813, Laws of 1927, the workmen's compensation act was again amended, § 3 of the act providing that monthly payments by employers to the accident fund should

". . . not exceed one hundred and twenty-five per cent of the estimated amount required to carry such class for such month, based on the previous five years experience of such class, but there may be added the amount of the estimated deficit, if any, in the accident fund of such class on the first of such calendar month."

By chapter 104, p. 297, Laws of 1931, the so-called "merit system," to be used by the department in determining the rates of payments to be made by employers to the accident fund, was introduced into the statute (§ 1, chapter 104, Laws of 1931, amending § 4, chapter 74, Laws of 1911, as amended by § 3, chapter 310, Laws of 1927).

Rem. Rev. Stat. (Sup.), §·7676, the law now in effect controlling this matter, reads as follows:

"The amounts to be paid into the accident fund shall be determined as follows: The Department of Labor and Industries shall, prior to the first day of January of each year determine for each class and/or sub-class, a basic premium rate for the ensuing calendar year, and in so doing, shall take into consideration, first, the cost experience of each class and sub-class over the two-year period immediately preceding September first of the year in which the basic rate is being fixed; second, the then condition of each class and/or sub-class account.

"The Department of Labor and Industries shall also, prior to the first day of January of each year determine the premium rate to be paid into said accident fund during the ensuing year by each employer to be credited to each class and/or sub-class account, applicable to the employer's operations or business, and in so doing, shall take into consideration, the average cost experience of each employer for each workman hour reported by him during each fiscal year in each such class or sub-class over the five-year period immediately preceding September first of the year in which

the rate is being determined, and in so computing, the cost experience of any employer, the fixed sum of four thousand five hundred dollars ($4,500) shall be charged against his experience for each injury resulting in death or total permanent disability of a workman instead of the actual cost to the accident fund of such injury. The actual premium rate which any employer shall be required to pay for the accident fund shall be forty per cent (40%) of the basic rate, plus sixty per cent (60%) of the employer's cost rate for each workman hour reported by him during each fiscal year over the five-year period next preceding the then last September first, but in no case shall the total rate exceed one hundred sixty per cent (160%) of the basic rate."

The theory that the accident record of an employer or class of employers should be considered in determining the amount of payments to the fund is inherent in the principle underlying industrial insurance. This is pointed out in the case of *State ex rel. Crabb v. Olinger,* 196 Wash. 308, 82 P. (2d) 865. It is entirely reasonable that the rates paid by employers conform as nearly as practicable to the risk, in the light of their accident experience. While accidents in industry will always occur, if by careful operation an employer reduces the number of accidents in his operations, this should be reflected, when possible, in the amount of his contributions to the accident fund.

Both appellant and respondents rely upon the following portion of Rem. Rev. Stat. (Sup.), § 7676:

"For the purpose of such payments into the accident fund, accounts shall be kept with each industry in accordance with the classification herein provided and no class shall be liable for the depletion of the accident fund from accidents happening in any other class. Each class shall meet and be liable for the accidents occurring in such class. The fund thereby created shall be termed the 'accident fund' which shall be devoted to the purpose specified for it in this act."

The intent of that portion of the statute is clear. It states the germ of the theory of the merit system.

That no class be liable "for the depletion of the accident fund from accidents happening in any other class" is emphasized by repetition. Of course, workmen engaged in a business which is most carefully operated may be injured

by accidents such as lightning or earthquake, which cannot be guarded against, and under such circumstances a most careful employer or a class in which accidents are rare, may be called upon to make large contributions to the accident fund.

In the case at bar, the employees of Frye suffered death or injury while in and about the plant of their employer. This, however, is not a controlling factor, as, if an employee is injured while in the course of his employment away from the plant of his employer, he is nevertheless within the protection of the act.

In determining the rights of the parties in the case at bar, those sections of the statute dealing with the nature of the employer's contribution and with accidents caused by third parties, as construed by this court, must be considered.

The basic purpose of industrial insurance or workmen's compensation is stated in the first section of the act of 1911, *supra,* namely, that industry should bear the burden of losses occasioned by accidents in its operations. This principle has been considered in many of our cases, beginning with *State ex rel. Davis-Smith Co. v. Clausen, supra.* The law is for the benefit of employers as well as employees. *State v. Postal Telegraph Co.,* 101 Wash. 630, 172 Pac. 902. In *Stertz v. Industrial Ins. Commission, supra,* the court said:

"Let it be remembered, too, that the employer himself is no longer liable, that doctrines which might seem harsh were this an employer's liability act or the common law still prevailing, are now reasonable under assessment upon the industry at large. This insurance scheme is founded on contributions on both sides, the workman contributing his reduced damages, the employer getting that and conceding more liabilities."

In the case of *Shaughnessy v. Northland S. S. Co.,* 94 Wash. 325, 162 Pac. 546, Ann. Cas. 1918B, 655, this principle was again stated as follows:

"Our workmen's compensation act, let us be reminded, is one under which neither the employer nor the employee has any right of election as to whether he will come under and be governed by its provisions, so far as extra hazardous

employment is concerned. Neither can exempt himself from the burdens which it imposes, nor by contract waive the benefits thereof in the sense that he can bar himself from the right to claim its benefits. The employee, by the terms of the act, has taken away from him the right to sue in the courts upon his cause of action, and in lieu thereof is furnished indemnity in certain specified amounts, payable from the accident fund provided for in the act, according to the nature of his injury, regardless of the fault of his employer. The employer is compelled to contribute to the accident fund certain specified amounts, according to the hazardous nature of the work of his employees, and in return therefor is furnished indemnity against all claims of his employees for injuries received in the course of their employment."

The exaction of payments by employers has been held constitutional as in effect a license or excise tax levied pursuant to the police power of the state. *State ex rel. Davis-Smith Co. v. Clausen, supra; State ex rel. Crabb v. Olinger, supra; Ernst v. Hingeley,* 11 Wn. (2d) 171, 118 P. (2d) 795; *Monroe Logging Co. v. Department of Labor & Industries,* 21 Wn. (2d) 800, 153 P. (2d) 511; *Mountain Timber Co. v. State,* 243 U. S. 219. These contributions by employers are, on the one hand, a license tax for the privilege of engaging in extrahazardous industry, and on the other hand, operate as payments for insurance which accords to the employer immunity from common-law actions arising in favor of his employees while engaged in their employment.

The employee's right to compensation for injury does not depend upon his employer's contribution to the fund. *Samarzich v. Aetna Life Ins. Co.,* 180 Wash. 379, 40 P. (2d) 129. The employee gains the right to compensation under the act as a substitute for his right to bring an action at common law. The right exists independently of negligence or the absence of negligence. *Shaughnessy v. Northland S. S. Co., supra.* On the other hand, the employer's immunity from suit by his employee depends upon the employer's payment of contributions under the act, as provided by the following portion of Rem. Rev. Stat. (Sup.), § 7676:

"In respect to any injury happening to any of his workmen during the period such employer shall be in default

in the payment of any premium, if such default be after demand for payment, or if such employer shall be in default for failure to furnish the Department with an estimated payroll and workmen hours or with monthly reports of his payroll and workmen hours as required by this section, the defaulting employer shall not be entitled to the benefits of this act, but shall be liable to suit by the injured workman (or his beneficiaries and dependents), at his or their option, as he would have been on March 14, 1911, and in any action brought against such employer, it shall be no defense for such employer to show that such injury was caused in whole or in part by the negligence of a fellow servant of the injured workman, that the negligence of the injured workman, other than his wilful act committed for the purpose of sustaining the injury contributed to the accident or that the injured workman had knowledge of the danger or assumed the risk which resulted in his injury. If such injured workman or his beneficiaries, or dependents, shall elect to take under this act, such action against the employer shall revert to the state for the benefit of the accident fund and/or medical aid fund."

The employer, then, is immune from suit by his employee in return for the contributions which he makes to the accident fund.

I shall now consider the history of the workmen's compensation act in connection with the matter of injuries suffered by workmen within the protection of the act, which accidents were caused by third parties and not the result of hazards in connection with the workman's employment. It is apparent that problems connected with this phase of industrial insurance have presented difficulties which the legislature has sought to solve by three different methods, all differing basically each from the others.

I consider this phase of the legislation contained in the act as originally enacted and early amendments thereto, for the purpose of calling attention to certain aspects which are not strictly pertinent to the present situation, but which are nevertheless historically important.

The history of this phase of the legislation is referred to at some length in the cases of *Robinson v. McHugh,* 158

Wash. 157, 291 Pac. 330, and *Denning v. Quist*, 160 Wash. 681, 296 Pac. 145.

The statute as originally enacted in 1911, p. 346, provided:

" . . . all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided. . . .

*"Provided, however,* That if the injury to a workman *occurring away from the plant of his employer* is due to the negligence or wrong of another not in the same employ, the injured workman . . . shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case." (Italics ours.)

Under this statute, the employee's right to elect between claiming under the act or suing the third party at common law depended upon the *place* where the injury occurred. If the accident happened on the employer's premises, the workman was limited to his compensation under the act, whether the injury was suffered in the course of his employment or was due to the negligence of a third party. If, however, the injury occurred away from the employer's premises, the workman had the right to elect whether he would take compensation under the act or bring a common-law action against the third party who caused his injury. If he chose the latter procedure, the department was subrogated to the workman's right of action for the purpose of reimbursing the accident fund.

By § 2, chapter 310, p. 816, Laws of 1927, it was provided

" . . . that if the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman . . . shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against

such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case."

By the foregoing, the element of the *place* of the accident was eliminated as a factor in the relationship between the injured workman and the third party.

Since the enactment of the foregoing amendment, the *place* where the injury happened to occur has been immaterial in determining the rights and liabilities of all interested parties. It is important to bear this fact in mind in connection with the case at bar.

From 1927 to 1929, every employer, whether within or without the scope of the act, was subject to common-law liabilities for injuries caused by him or his agents when occupying the relation of third-party employer to an injured workman. The employer's immunity under the act extended to suits by his own employees only. If he negligently injured the employee of another employer, he was subject to suit either by the workman or by the department. Thus, where the injury was caused by a third party, that party was ultimately responsible for reimbursement to the accident fund, provided he was solvent and a common-law liability could be established against him.

By § 1, chapter 132, p. 327, Laws of 1929, the act was again amended by the following proviso:

"*Provided, however,* That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act. Any such cause of action assigned to the state may be prosecuted or compromised by the department, in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund, may be made only with the written approval of the department."

This amendment granted to all employers under the act (and to workmen) an immunity from suit which they had

not previously enjoyed, and it should be held that this new and important immunity carried with it the correlative burden of compensatory assessments. Prior to the enactment of the 1929 amendment last referred to, the accident fund was reimbursed for compensation paid to workmen under the act who had been injured by third-party employers, by common-law remedies available to the department against such third-party employers whenever possible. Since 1929, the accident fund may be reimbursed only by assessments levied pursuant to the act.

It does not seem reasonable that the legislature intended to shift this burden from the third-party employer who was responsible for the accident, to the employer, in the form of increased contributions to the accident fund. From portions of the statute above quoted, it appears that the legislature had provided that an employer who had not paid his contributions under the act was not immune from suit by his own employee. In other words, the immunity of the employer was made dependent upon his payment of assessments due from him.

In the case of *O'Brien v. Northern Pac. R. Co.*, 192 Wash. 55, 72 P. (2d) 602, this court held that the same principle should be applied when a third party, an employer engaged in business classified as extrahazardous, sought to claim the immunity granted by the act. It was assumed that the defendant railroad was not amenable to contributions to the accident fund in connection with its interstate operations. This case is important in connection with the question to be here determined, and we quote at length from the opinion:

"We understand respondent to contend that the provisos make it amenable to the industrial insurance act; and that, since it is amenable to the act, and since it was, at the time of the collision, engaged in an extrahazardous employment, it is entitled to immunity from liability in the present suit by virtue of the proviso of Rem. Rev. Stat., § 7675, above quoted—notwithstanding it was not a contributor to the accident fund.

"We doubt that the provisos to Rem. Rev. Stat., § 7693, can be said in any sense to make respondent amenable to

the industrial insurance act in its railroad operations. But assuming that they do, *we think that respondent's argument overlooks one of the very fundamentals of what Judge Chadwick, in State v. Mountain Timber Co., 75 Wash. 581, 135 Pac. 645, called 'the idea of industrial insurance.' It is that not only industries should bear the cost of industrial accidents in proportion to their inherent hazards, but that the individual employer should be taxed in accordance with the standard of safety maintained in his operations.* The germ of the idea appeared in the original act (Laws 1911, chapter 74, § 4, p. 349), wherein it was provided:

" 'Insomuch as industry should bear the greater portion of the burden of the cost of its accidents, each employer shall, prior to January 15th of each year, pay into the state treasury, in accordance with the following schedule, a sum equal to a percentage of his total pay roll for that year, to-wit: *(the same being deemed the most accurate method of equitable distribution of burden in proportion to relative hazard)*: . . .'

"From time to time, the idea has developed, until in 1931 an elaborate plan was effected for computing rates of contribution to the 'accident fund.' (Laws 1931, chapter 104, § 1, p. 297.) The plan was designed to levy contribution at rates based largely upon the individual employer's 'cost experience.' *This principle of adjusting the employer's rate of assessment by the measure of his own cost experience plainly indicates that the basis for the immunity from suit afforded the employer by the act is made dependent upon his contribution to the accident fund.* This view is fortified by Rem. Rev. Stat., § 7676 [P. C. § 3471], which specifically deprives an employer, who is in default in payment of premiums, of the benefits of the act, and subjects him to suit by an injured employee. And in such a suit, the employer may not interpose the defenses of negligence of fellow servant, contributory negligence, or assumption of risk.

"In view of this section, an anomalous situation would be created by the logical application of respondent's contention: A defaulting employer would be subject to suit by his own employee, but, merely by reason of being engaged in extrahazardous employment, be immune from suit by a workman in the employ of someone else.

"Construing the above quoted proviso of Rem. Rev. Stat., § 7675, in the light of the industrial insurance act as a whole, we think a workman, engaged in extrahazardous employ-

ment, is not precluded from maintaining an action for negligence against one not his employer, unless such a one is amenable to the act and a contributor to the 'accident fund.' " (Italics ours.)

The case last cited was followed in the case of *Reeder v. Crewes*, 199 Wash. 40, 90 P. (2d) 267, in which it was held that a third-party employer engaged in extrahazardous industry at the time of the accident, but who was in default in his contributions under the act, could claim no immunity from suit by a workman in the employ of another employer who was also within the scope of the act.

In the later case of *Gephart v. Stout*, 11 Wn. (2d) 184, 118 P. (2d) 801, the court cited the *O'Brien* and *Reeder* cases (with others), saying:

"While the foregoing cases are not directly in point, they do clearly establish two essential requirements which an employer must meet to entitle him to immunity from suit by a workman not in his employ: (1) The employer must be a contributor to the workmen's compensation fund; and (2) *at the time of the accident,* the employer must be *in the course of some extrahazardous employment* under the industrial insurance act."

In the case of *Koreski v. Seattle Hardware Co.*, 17 Wn. (2d) 421, 135 P. (2d) 860, it appeared that the plaintiff was president and manager of a corporation which was requested by the defendant to service one of its machines. While engaged in this work on the defendant's premises, the plaintiff was injured. The defendant was an employer under the workmen's compensation act, and had fully paid all contributions assessed against it thereunder. The plaintiff's employer was engaged in extrahazardous industry, but had not paid any contributions to the industrial insurance fund, nor had it reported to the director of the department of labor and industries that the plaintiff in the action was carried on its payroll. The plaintiff sued the Seattle Hardware Company, alleging that he had been injured as the result of defendant's negligence. At the close of plaintiff's case before the superior court, the defendant moved to dismiss the action on three grounds, one being that plain-

tiff's right of action had been abolished by the workmen's compensation act. The trial court granted the motion on other grounds and discharged the jury. Subsequently, the court granted plaintiff's motion for a new trial, from which order the defendant appealed to this court.

After holding that plaintiff was a workman within the terms of the workmen's compensation act, this court stated that, under the circumstances, the plaintiff was not entitled to benefits under that act, saying:

"The workmen's compensation act was enacted in 1911. Laws of 1911, chapter 74, § 3, p. 348, provided that any individual employer or any member or officer of any corporate employer, who was carried upon the payroll at a salary or wage not less than the average salary or wage named in such payroll and who was injured, was entitled to the benefits of the act as and under the same circumstances and subject to the same obligations as a workman. The foregoing section, now appearing as Rem. Rev. Stat. (Sup.), § 7675, was amended by Laws of 1917, chapter 120, § 1, p. 476, which provides as a condition precedent to benefits under the act that the employer, prior to the date of the injury, notify the industrial insurance commission of the fact that such person is being carried upon the payroll."

Nevertheless, in spite of the fact that the plaintiff was not entitled to compensation under the act, the defendant in the action, Seattle Hardware Company, the third party, being an employer under the act and in good standing, was immune from suit by the plaintiff in an action based upon alleged negligence on the part of the defendant. Concerning this phase of the case, the court said:

"Those who comply with the terms and conditions of the workmen's compensation act are entitled to all the benefits of the act and subject to all of the liabilities of the act. As appellant complied with the terms of the workmen's compensation act, immunity from liability for negligently injuring respondent, who was the employee of another employer, is a benefit to which appellant is entitled under the act."

From this statement, it is clear that the immunity from suit enjoyed by a third-party employer is a benefit which such an employer receives in return for payments on his

part of contributions which he is called upon to make to the accident fund, pursuant to the terms of the statute.

The last four cases cited are important here. The third-party employer, before he can claim immunity from suit by an employee of another employer under the act, must have paid the contributions due from him to the accident fund; this for the good reason, as indicated in the italicized portions which we have quoted from the *O'Brien* case, that the party who under the act enjoys immunity from suit in any given case should bear the correlative burden of assessments.

The idea expressed in the *O'Brien* case, *supra,* "that the individual employer should be taxed in accordance with the standard of safety maintained in his operations," indicates that when an accident is caused by a third-party employer subject to the act, such accident should be reflected in his cost experience. While in the *O'Brien* case the position of the third party in connection with the merit system was not before the court, that phase of the matter was recognized and referred to.

If an employer must bear the increase in his cost experience because of an injury caused by a third party, the operation of the merit system is greatly limited in its effect.

In 15 Wash. L. Rev. 132, is found an article by Lowell P. Mickelwait, Esquire, a member of the bar of this court, entitled "The Washington Workmen's Compensation Act from the Employers' Viewpoint." In its introductory paragraph the author observes:

"Every well-advised employer now realizes that, in the long run, his industrial insurance premiums will tend to approximate the cost of the accidents occurring in his own plant. By the maintenance of high safety standards or other accident prevention measures the employer may reduce substantially his accident cost experience, thereby receiving a material reduction in his premiums payable to the Department of Labor & Industries. This so-called 'merit-rating' plan constitutes the outstanding feature of the present law."

After stating the basic plan of the statute, the author continues:

"It is thus observed that the employer's rates are the result of (1) the experience of his industrial class, and (2) his own experience. Consequently, the law not only acts as an incentive to the individual employer to reduce his accident experience, but it also tends to induce him to cooperate with the other employers in his class so as to decrease the basic rate. There are in the various classes of industry a number of examples of the results that can be obtained through accident prevention measures and careful supervision of claims. In some classes the cost experience has been gradually reduced over the last five years with the result that successive reductions have been obtained in the applicable rates, and substantial reserves have been accumulated."

Certainly, the merit system in estimating an employer's accident experience as one consideration in fixing the contributions to be required from employers under the act, is an important factor in trending toward a reduction of industrial accidents. It would seem that the good effects to be expected from the system would be lessened if an employer's cost experience is to be charged with an accident caused by a third-party employer who is under the act, over whose operations the employer has no control.

Every employer may at any time find himself in the position of a third-party employer causing an injury to a workman employed by another who is within the act. Because of the statute, the employer causing the injury is immune from suit by the injured workman. In return for this immunity, the employer responsible for the injury pays contributions or premiums based upon *his* cost experience.

It would seem that appellant recognizes the difficulty of its position, stating in its opening brief (p. 31):

"If this immunity from suit, which thereby prohibits indemnification of the accident fund, is wrong, clearly this court cannot nullify this statutory provision in the face of the plain legislative expression of policy."

It is a sufficient answer that the immunity granted the third-party employer (appellant here) does not prohibit

reimbursement by him to the accident fund. It merely substitutes increased contributions to that fund by the third-party employer for the possible recovery at common law against him, from which such an employer was relieved by the amendment to the statute above quoted.

The accident which caused this lawsuit shows the considerable risks which inhere in the operations of Boeing, but the net result of the majority opinion will be to very considerably raise the cost experience of the class to which Frye belongs.

It is true, as stated by the majority, that the statute, Rem. Rev. Stat. (Sup.), § 7676, "plainly provides that no class shall be liable for the depletion of the accident fund from accidents happening in any other class." It remains, however, for judicial construction of the statute to determine in which class the accident with which we are now concerned happened or occurred. The fact that Frye's employees who were killed or injured were at the time of the accident in or about Frye's plant, is immaterial. If an employee of Frye had been, on his master's business, sent to the plant operated by Boeing and while on that plant had been injured by a falling airplane operated by Boeing's employees, or by a boiler explosion, or by any other accident, the question presented would be exactly the same as above stated; the place where the accident occurs is unimportant.

I agree with the majority in holding that the fact that the accident in question occasioned the loss of many lives nowise changes the situation. The great magnitude of the disaster cannot affect the judicial construction of the applicable statutes.

The question presented is difficult. It seems to me, however, that, in consideration of the original statute and the various amendments which have been made thereto with particular reference to the merit system, which is manifestly an important factor and a helpful one, it should be held that the legislature intended that a third-party employer in the situation of appellant who, pursuant to the amendment to the act, has been granted immunity from

suit in such a situation as that presented in the case at bar, should be required to pay the increased assessment in aid of the accident fund rendered necessary by the accident. This places the burden of compensation for the immunity from suit enjoyed by the third-party employer where that burden properly belongs, instead of casting it upon another employer.

It should also be remembered that the director of the department ruled that the cost experience of the accident should be borne by appellant Boeing, and that this ruling was affirmed by the joint board. While of course the departmental ruling is not entitled to the weight which such a ruling carries when determining a disputed question of fact, the departmental order is nevertheless an administrative act which is entitled to consideration.

For the reasons stated, I dissent from the conclusion reached by the majority.

STEINERT and JEFFERS, JJ., concur with BEALS, C. J.

---

April 4, 1945. Petition for rehearing denied.