[No. 29469.    Department Two.    November 17, 1944.]

MONROE LOGGING COMPANY, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 153 P. (2d) 511.

*Kerr, McCord & Carey,* for appellant.

*The Attorney General* and *L. E. O'Neill, Assistant,* for respondent.

*Allen, Hilen, Froude & DeGarmo* and *Tim Healy, amici curiae.*

BLAKE, J.—This is an appeal from a judgment affirming an order of the joint board of the department of labor and industries fixing the rate of premium to be paid by appellant in its logging operation. The logging operation, though carried on under the firm name of Monroe Logging Company, is a joint venture of two corporations, the Jamison Mill Company and the Lyman Timber Company.

As of November 10, 1941, these two corporations acquired all the assets of the Monroe Logging Company, a corporation, "except cash, accounts receivable, notes receivable, logs in water and one share of stock of Puget Sound Log Scaling and Grading Bureau." In making the deal, it was stipulated by the parties that steps should be taken immediately "to liquidate and disincorporate the Monroe Logging Company and . . . [the purchasers] to use the name 'Monroe Logging Company' as a trade name . . ."

The Monroe Logging Company, the corporation, was dissolved shortly after consummation of the deal. The joint adventurers, Jamison Mill Company and Lyman Timber Company, filed a statement of firm name (Monroe Logging Company) with the clerk of the superior court of Snohomish county, registered as such with the state tax commission, and filed a report as such with the state unemployment compensation division. They failed, however, to comply with the industrial insurance provisions of the workmen's compensation act, Laws of 1939, chapter 138, p. 388, § 1, Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471]:

"Every employer who shall enter into any business, or who shall resume operations in any work or plant after the final adjustment of his payroll in connection therewith, shall, before so commencing or resuming operations, as the case may be, notify the Director of Labor and Industries of such fact, accompanying such notification with an estimate

of his payroll and workmen hours for the first calendar month of his proposed operations, and shall make payment of the premium on such estimate. Every such employer shall be liable for a premium of at least such estimate. Every such employer shall pay the full basic rate until such time as an experience rating in excess of a one, two, three or four year period may be computed as of a first succeeding September first date, and shall be liable for a premium of at least one dollar ($1.00) per month irrespective of the amount of his workmen hours reported during said month to the Department."

Instead, beginning with the month of November, 1941, the firm made payroll reports which, in form, were identical with the payroll reports theretofore made by the Monroe Logging Company, the corporation; and, in place of paying premiums at the basic rate prescribed by the provision of the statute quoted above, it paid at the experience rating of the Monroe Logging Company, the corporation. That corporation had been operating for many years and had been paying premiums on an experience rating which was much less than the basic rate. When the matter came to the attention of the supervisor of the department of labor and industries, he ruled that appellant was liable for premiums at the basic rate, and entered an order accordingly. The joint board sustained the ruling, and the superior court affirmed it.

As we understand its argument, appellant justifies its payment of premiums on the experience rating of the Monroe Logging Company, the corporation, on three grounds: (1) That the requirement of notice to the department was satisfied in that "Checks issued in payment of premiums clearly state that the present Monroe Logging Company is a joint venture, owned by the Lyman Timber Company and Jamison Mill Company"; (2) in that there was no shutdown occasioned by the transfer, operation being continuous and carried on by the same personnel and management; and (3) that the impact of premium rates, provided for in the industrial insurance act, is upon *plant* rather than upon employer.

The import of the argument in support of the first

position is that the form of the checks in payment of premiums constituted notice to the department of change of ownership, and the claim of appellant of the right to the experience rating of the Monroe Logging Company, the corporation, in payment of premiums; in other words, that, by accepting the checks, the department waived the requirements of the statute and cannot now enforce the provision for the basic rate required by § 7676.

The position is without foundation. The premiums payable for industrial insurance are excise taxes. *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101; *Mountain Timber Co. v. Washington,* 243 U. S. 219, 61 L. Ed. 685, 37 S. Ct. 260; *Lane v. Department of Labor & Industries,* 121 Wash. Dec. 395, 151 P. (2d) 440. That an administrative officer has no power to waive the collection of taxes provided for by legislative enactment, is elementary.

The second position taken by appellant is equally without substance. Appellant recognized the necessity of registering with the state tax commission for tax purposes and of filing reports with the state unemployment compensation division. It seems to us that, if, in contemplation of the social security act and other tax statutes, the Monroe Logging Company lost or changed its identity as of November 10, 1941, as a taxpayer, it then became a new taxpaying entity (employer) in contemplation of § 7676. We do not think that continuity of the operation and retention of the old personnel and management have any bearing upon the construction of the statute. Appellant was under no obligation to retain the old personnel and management, and conceivably, would not have done so had the experience rating of the Monroe Logging Company, the corporation, been on the demerit side of the basic rate instead of on the merit side. It is a fair inference that, had the experience rating of the corporation been more than the basic rate, appellant would have resisted any attempt on the part of the department to assess premiums on such basis.

What we have designated as appellant's third contention is so succinctly stated in its brief that we quote it:

"There can be no doubt from reading the early acts that

it was the experience of the establishment or plant and not ownership that was the material factor in rate adjustment. . . .

"When the merit system was established by the amendment of 1931 (Laws of 1931, Chapter 104, p. 297), material changes, of course, were required and comparison of the 1931 act with its immediate predecessor (Chapter 310, Laws of 1927, p. 813 *et seq.*) shows that the fundamental basis of rating by industrial experience of each plant or establishment within each class or sub-class, was intended to depend upon its industrial experience rather than upon the ownership or the employer and that merit rating pertained to the plant or the establishment rather than to the person of the employer. Without pointing out all of the particular changes and phraseology, one sentence clearly illustrates this (Laws of 1931, p. 299) as follows:

" 'If any employer shall operate more than one plant or establishment, a premium rate shall be determined for *each plant* or *establishment* according to *its* cost experience.' "

Upon examination of the original act, Laws of 1911, chapter 74, p. 349, § 4, and amendments prior to 1931, one will find much substance for appellant's theory. The idea was even carried into the 1931 amendment of § 4 (Laws of 1931, chapter 104, pp. 297, 299, § 1, Rem. Rev. Stat., § 7676), as appears from the last sentence of the quotation given above from appellant's brief. The provision, we think, created an anomaly; for, in all other aspects, the duties and obligations imposed by the section as amended by the 1931 act were upon the *employer*. We are supported in this opinion by the fact that the sentence was omitted in the 1937 amendment (Laws of 1937, chapter 89, pp. 345, 347, § 1). Nor does it appear in the amendment of 1939. So, as the act now stands, we think there is no basis for the contention that the experience of the establishment or plant, rather than ownership, is the material factor in rate adjustment. We think the proposition is refuted by the plain terms of the paragraph of § 7676 which we quoted at the outset of the discussion.

We conclude that the joint venture, composed of the Jamison Mill Company and the Lyman Timber Company, was an employer which entered into business as of Novem-

ber 10, 1941, and is liable for premiums at the basic rate "until such time as an experience rating . . . may be computed."

Judgment affirmed.

BEALS and MALLERY, JJ., concur.

SIMPSON, C. J., and ROBINSON, J., concur in the result.