[No. 31017. Department One. December 15, 1949.]

ARTIFICIAL ICE AND FUEL COMPANY, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

RAINIER FRUIT COMPANY, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 212 P. (2d) 489.

*The Attorney General* and *Theodore M. Ryan, Assistant,* for appellant.

*D. V. & Lane Morthland,* for respondents.

*Burns Poe, amicus curiae.*

GRADY, J.—These consolidated appeals involve the assessment of premium rates to be paid under the workmen's compensation act. The trial court, on appeal from orders of the department of labor and industries requiring the payment of the statutory basic rate instead of on the basis of a merit rating, made findings of fact and entered judgments reversing the orders and declaring that the plaintiffs were entitled to the benefit of earned merit ratings. The department has appealed.

Over a period of years the Raymond and Bunting families of Yakima were engaged in business of a character which required them, as employers, to contribute to the industrial accident fund. They operated under various names. At times they operated as partners and at other times through corporate entities. Persons closely associated with the families had at times financial interests with them.

About July 1, 1943, the Artificial Ice and Fuel Company and the Rainier Fruit Company were formed as partnerships. Prior to that date, there had been in existence three corporations, Yakima Artificial Ice and Cold Storage Company, City Ice Delivery Company, and Rainier Fruit Corporation. The Yakima Artificial Ice and Cold Storage Company was dissolved and its assets transferred to the two newly formed partnerships. The City Ice Delivery Company became dormant, but remained in existence. Rainier Fruit Corporation became dormant and its operations were continued by the Rainier Fruit Company, a partnership. The business previously conducted by the corporations was conducted by the partnerships from July 1, 1943, until August 29, 1947. The partnerships filed reports upon their

employees, as was required by the department of labor and industries and earned favorable merit ratings.

About August 29, 1947, City Ice Delivery Company, the dormant corporation, amended its articles of incorporation, changing its name to Artificial Ice and Fuel Company, and increasing its authorized capital stock. On that date, the assets of the partnership of the same name were transferred to the corporation. In exchange for these assets, all of the additional capital stock of the corporation was issued to the members of the former partnership in a dollar-for-dollar ratio on the basis of the worth of the assets as owned by the partners. Substantially the same procedure was followed by Rainier Fruit Corporation, the dormant corporation. It changed its name to Rainier Fruit Company and took over the operations of the partnership of the same name.

Prior to the amendment of the articles of incorporation of the dormant corporations, all of their stockholders were members of the partnerships. No material change was made in any of their books of account, or in any of their methods of operation. Since the dates of their reorganizations, the corporations have carried on the identical business activities and followed the identical policies as were formerly carried on by the respective partnerships.

The department of labor and industries, treating the respondents as new employers, assigned to them new firm numbers and new basic rate structures. These rates were in excess of the merit rates theretofore earned by the partnerships. The trial court concluded that the changes made in the entities by and through which the parties transacted their business were changes in legal structure only and not of substance, and therefore the status of new employers was not created.

The governing statute is Rem. Supp. 1947, § 7676c, which provides as follows:

"Every employer who shall enter into any business or commence any operation subject to industrial insurance classification, shall, before so commencing notify the Director of Labor and Industries of such fact, accompanying such notification with an estimate of his payroll and workmen

hours for the first calendar month of his proposed operations, and shall make payment of the premium on such estimate with adjustments to be subsequently made. Every such employer shall pay the full basic rate until such time as an experience rating in excess of a one year period may be computed as of a first succeeding July first date, and shall be liable for a premium of at least one dollar ($1.00) per month irrespective of the amount of his workmen hours reported during said month to the Department: *Provided,* That any employer who has had an experience rating and made payment on the merit basis for any operation subject to any industrial insurance classification within the fiscal year preceding the fiscal year in which he resumes that operation or in the current fiscal year, or an employer who resumes an operation in the same fiscal year in which he ceased that operation and who would have had an experience rating in such year had he not ceased such operation, shall be entitled to be restored to his merit rating by class based on his previous experience: *Provided, further,* That no other resuming employer shall have his preceding experience whether or not such experience shall have been in the preceding five years except as herein provided for a new employer."

The purpose of the merit rating is to furnish an inducement to employers to reduce the demands upon the industrial insurance fund caused by injuries sustained by their employees. During the time the employer operates under such rating, he pays less money into the fund. The statute contemplates that, when a merit rating is once earned by an employer, it should continue so long as he is entitled thereto. He may cease to be an employer for a time, but when he resumes he may be restored to his merit rating.

The question now before the court is whether the Raymond and Bunting families, have finally decided to transact their business through corporate entities, have abandoned their former status and become new employers and subject to the basic rates.

We decided in the case of *Monroe Logging Co. v. Department of Labor & Industries,* 21 Wn. (2d) 800, 153 P. (2d) 511, that when two separate corporations, the Jamison Mill Company and the Lyman Timber Company, jointly acquired

all of the assets of the Monroe Logging Company, except cash, accounts and notes receivable, etc., and that corporate employer was dissolved and the purchasing corporations adopted its name, they became a new employer. The parties themselves recognized the new employer status as a new entity, registered with the state tax commission for tax purposes, and filed reports with the state unemployment compensation division. The thought was expressed in the opinion that, if a new employer was created in contemplation of the social security act and other tax statutes, such employer then became a new taxpaying entity in contemplation of Rem. Rev. Stat. (Sup.) § 7676 [P.P.C. § 717-1].

In the case of *Puget Sound Bridge & Dredging Co. v. Department of Labor & Industries*, 26 Wn. (2d) 534, 174 P. (2d) 541, two corporations, the Puget Sound Bridge and Dredging Company and the Lake Union Dry Dock and Machine Works, were engaged in a joint business venture and had earned a certain merit rating. Later, the Lake Union company retired from the business, and it was carried on by the other member of the joint venture under the same name. In that case, we decided that the merit rating should continue, the basic reason being that while the form had changed, in that there had been a dissolution of the joint venture, the substance remained, in that the other member of the joint venture had secured the interests of its former associate, and therefore it was not an "employer who shall enter into any business" under the act. The only essential difference between the situation in the latter case and the ones before us seems to be a change in names.

We think the proper rule to be applied in cases of this kind is that, where parties engaged in business earn a merit rating, the mere fact that they change from a corporation to a partnership or from a partnership to a corporation is not such a change of employer that they lose their merit rating. If the change is in legal structure only, and was one of form and not of substance, as found by the trial judge in

the cases before us, then the business is entitled to retain its merit rating.

The judgments are affirmed.

SIMPSON, C. J., MALLERY, and DONWORTH, JJ., concur.

SCHWELLENBACH, J. (dissenting)—I wish to add to the statement of the case given by the majority. In 1943, Yakima Artificial Ice and Cold Storage Company, an operating corporation, transferred its assets to Artificial Ice and Fuel Company, a partnership; and Rainier Fruit Corporation, an operating corporation, transferred its assets to Rainier Fruit Company, a partnership. City Ice Delivery Company, a corporation, remained dormant. The latter had never been an operating company; had never engaged in extrahazardous employment; and had never acquired an experience rating.

As mentioned by the majority, the statute has been considered by this court in two cases; *Monroe Logging Co. v. Department of Labor & Industries*, 21 Wn. (2d) 800, 153 P. (2d) 511, and *Puget Sound Bridge & Dredging Co. v. Department of Labor & Industries*, 26 Wn. (2d) 534, 174 P. (2d) 541. In the *Monroe Logging Co.* case, two corporations, the Jamison Mill Company and the Lyman Timber Company, acquired all the assets of the Monroe Logging Company, except cash, accounts receivable, notes receivable, etc. The Monroe Logging Company was dissolved, and the two purchasing corporations were allowed to use the name "Monroe Logging Company" as a trade name. The joint venture claimed that it was entitled to the merit rating earned by the original corporation, rather than being compelled to pay the basic rate as a new employer. This contention was based upon the fact that there was no shutdown occasioned by the transfer, operation being continuous and carried on by the same personnel and management. We held, however, that the joint venture composed of the Jamison Mill Company and the Lyman Timber Company, was a new employer under the act, saying:

"Appellant recognized the necessity of registering with the state tax commission for tax purposes and of filing re-

ports with the state unemployment compensation division. It seems to us that, if, in contemplation of the social security act and other tax statutes, the Monroe Logging Company lost or changed its identity as of November 10, 1941, as a taxpayer, it then became a new taxpaying entity (employer) in contemplation of § 7676. We do not think that continuity of the operation and retention of the old personnel and management have any bearing upon the construction of the statute. Appellant was under no obligation to retain the old personnel and management, and conceivably, would not have done so had the experience rating of the Monroe Logging Company, the corporation, been on the demerit side of the basic rate instead of on the merit side. It is a fair inference that, had the experience rating of the corporation been more than the basic rate, appellant would have resisted any attempt on the part of the department to assess premiums on such basis."

I disagree with the majority that the basic reason for our decision in the *Puget Sound* case was

". . . that while the form had changed, in that there had been a dissolution of the joint venture, the substance remained, in that the other member of the joint venture had secured the interests of its former associate."

There, the Lake Union company dropped out, but Puget Sound remained. It had earned the merit rating and was not a new employer. The majority says: "The only essential difference between the situation in the latter case and the ones before us seems to be a change in names." If, in the present case, the partnership and the corporation had jointly, as a joint venture, earned the merit rating and the partnership had withdrawn, the situation would then be analogous to that of the *Puget Sound* case. That was not the situation here.

The majority bases its decision upon the ground that the change was one of legal structure only, that it was one of form and not of substance. If that theory were carried to its logical conclusion, we would have to hold, for example, that if "A" corporation, of which B, C, and D were the sole stockholders, had acquired a certain experience rating, and that thereafter B, C and D sold their stock to X, Y, and Z,

"A" corporation would then become a new employer and would be subject to the basic rate, because the change would be of substance though not of form.

Let us examine the situation in the present case realistically. We have a partnership which had acquired a certain merit rating. But it went out of existence; it dissolved; it sold all of its assets. Its assets were acquired by the City Ice Delivery Company, a corporation, which had remained dormant for years; had never been an operating company; had never engaged in extrahazardous employment; and had never acquired an experience rating. This dormant corporation, after being dusted off, then changed its name to that of the old partnership and increased its capital stock. Upon the completion of the transaction, the partnership ceased to exist and, hence, was no longer the employer. In acquiring the operating business, the reorganized corporation became the employer.

The test in each case is not whether there has been a change of form, a change in substance, or a change in the legal entity. Those are simply circumstances to be considered in arriving at the ultimate solution of each problem. The real test is: Did the individual or organization in question become an "employer" as defined by Rem. Supp. 1947, § 7676c, wherein it states: "Every employer who shall enter into any business or commence any operation subject to industrial insurance classification"? It seems clear to me that the rejuvenated corporation, City Ice Delivery Company, in taking over the name and business of the dissolved partnership and thus for the first time engaging in extrahazardous work, commenced an "operation subject to industrial insurance classification," and, as such, was required to start at the basic rate as provided by the statute.

January 21, 1950. Petition for rehearing denied.